**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER**, | |
| Plaintiff, | |
| v. | Case No. 1:19-cv-02906 (TNM) |
| **NATIONAL SECURITY COMMISSION ON ARTIFICIAL INTELLIGENCE**, *et al.*, | |
| Defendants. | |

---

## <u>MEMORANDUM OPINION AND ORDER</u>

Congress recently created the National Security Commission on Artificial Intelligence. The Electronic Privacy Information Center ("EPIC") wants to shed light on the Commission's work. EPIC requested records from the Commission and the Department of Defense under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Neither entity was forthcoming with records, so EPIC sued. The Government moves to dismiss some of EPIC's claims. Its primary contention is that the Commission is not an "agency" subject to FOIA. The Court finds otherwise. For this and other reasons, the Court denies the Government's motion.

## I.

Congress gave the Commission its marching orders in the John S. McCain National Defense Authorization Act for Fiscal Year 2019 ("NDAA"). *See* Pub. L. No. 115-232, § 1051, 132 Stat. 1636, 1962–65 (2018). Its mandate is "to review advances in artificial intelligence, related machine learning developments, and associated technologies." *Id.* § 1051(a)(1). In carrying out that review, the Commission must consider many factors, including the country's national security needs. *See id.* § 1051(b)(1)–(2). This review is not academic. The NDAA

requires the Commission to submit three reports to the President and Congress. *Id.* § 1051(c). These reports are to contain the Commission's findings and any recommendations it has "for action by the executive branch and Congress related to artificial intelligence . . . including recommendations to more effectively organize the Federal Government." *Id.* § 1051(c)(1). The reports "shall be made publicly available, but may include a classified annex." *Id.* § 1051(c)(3).

The Commission was to submit an initial report within 180 days of its creation, *id.* § 1051(c)(1), and an interim report was due in August 2019. *Id.* § 1051(c)(2). Both reports came late. Compl. ¶¶ 75, 79, ECF No. 1. The Commission will end in October 2020. Pub. L. No. 115-232, § 1051(e).[1] Before then, the Commission must submit one final report to the President and Congress. *See id.* § 1051(c)(2).

The Commission consists of 15 members. *Id.* § 1051(a)(4)(A). Most are congressional appointees. The Secretary of Defense appoints two members and the Secretary of Commerce appoints one. *Id.* § 1051(a)(4)(A)(i)–(ii). But the chairman or ranking member of six congressional committees appoint the others. *Id.* § 1051(a)(4)(A)(iii)–(xiv).

EPIC describes itself as "one of the leading organizations in the country with respect to the privacy and human rights implications of AI use." Compl. ¶ 10. So it comes as little surprise that EPIC has closely tracked the Commission. Or at least it tries to do so. EPIC alleges that the Commission "has operated almost entirely in secret." *Id.* ¶ 59. When EPIC filed its Complaint, the Commission had held at least 13 meetings and had received "more than 100 briefings." *Id.* ¶ 38. But the Commission had conducted these proceedings "behind closed doors" and had "failed to publish or disclose any notices, agendas, minutes, or materials for those meetings." *Id.*

---

[1] The NDAA for Fiscal Year 2020, not yet enacted, would extend the life of the Commission through March 2021. *See* S. 1790, 116th Cong. § 1083 (2019).

¶ 59.  Meanwhile, the Commission is now working to prepare its final recommendations.  *See*

Compl. Ex. H.  These recommendations, EPIC claims, "could have far-reaching implications for

the U.S. government, private companies, and the public at large."  Compl. ¶ 5.

EPIC has tried to shine light on the Commission.  In February, EPIC asked DOD for

records related to the Commission's work, invoking both FOIA and the Federal Advisory

Committee Act ("FACA"), 5 U.S.C. app. 2.  Compl. Ex. B at 1, 6.[2]  EPIC requested expedited

processing under FOIA.  *Id.* at 4–5; *see* 5 U.S.C. § 552(a)(6)(E).  EPIC gave two reasons why its

request was urgent.  Compl. Ex. B at 4.  First, the release of the Commission's initial report was

imminent.  *Id.*  Second, the Commission was "operating at a time when the White House has

launched the 'American AI Initiative.'"  *Id.*  So the Commission's "findings, recommendations,

and proceedings" would "have significant influence on AI policymaking by both Congress and

the executive branch."  *Id.*

DOD acknowledged EPIC's FOIA request six days later.  Compl. Ex. C.  Though it had

"begun processing" the request, it was unable to respond within FOIA's 20-day period because

of "unusual circumstances."  *Id.*  It also denied EPIC's request for expedited processing because

EPIC had "not clearly demonstrated how the information will lose its value if not processed on

an expedited basis."  *Id.*  EPIC filed an administrative appeal of DOD's denial of expedited

processing.  Compl. Ex. E.  DOD had not acted on this appeal when EPIC sued here.  *See*

Compl. ¶¶ 109–10.

In September, EPIC submitted requests under FOIA and FACA to the Commission itself.

Compl. Ex. I at 1, 11.  It again requested expedited processing under FOIA.  *Id.* at 8–9.  EPIC

---

[2]  The Complaint does not explain why EPIC thought it could get the Commission's records
through DOD.  The Commission is not part of DOD, though Congress funded the Commission
with $10,000,000 that it had appropriated to DOD.  *See* Pub. L. No. 115-232, § 1051(a)(2), (d).

said it was urgent to inform the public about the Commission's activities before it released its interim report.  *Id.*  EPIC also reiterated that the Commission's findings and recommendations would "have significant influence on the White House's [AI] initiative and on AI policy generally."  *Id.* at 9.  The Commission acknowledged receipt of EPIC's requests but has not otherwise responded to them.  Compl. ¶¶ 81, 84, 94–97.

Sixteen days after it submitted its requests to the Commission, EPIC filed this action.  *Id.* ¶ 95.  The Complaint raises three claims under FOIA, two claims under FACA, and three claims under the Administrative Procedure Act.  *See id.* ¶¶ 112–63.  EPIC simultaneously moved for a preliminary injunction.  Mot. for Prelim. Inj. at 1,[3] ECF No. 4.  It claimed it would suffer irreparable harm if the Court did not immediately order the Commission and DOD to process its FOIA requests in an expedited fashion.  *See* Mem. in Supp. of Mot. for Prelim. Inj. at 9–10, ECF No. 4-1.  After holding a hearing, the Court denied the motion because EPIC had failed to show irreparable harm.  *See* Tr. of Prelim. Inj. Hr'g at 46–47, ECF No. 22.

The hearing revealed that the Commission is more likely than DOD to have the records that EPIC wants.  *See id.* at 32.  The Commission has no other pending FOIA requests or even a FOIA apparatus.  *Id.* at 28, 31.  Indeed, the Government claimed that the Commission is not subject to FOIA.  *Id.* at 28.  The Court thus ordered expedited briefing on this threshold question. *See id.* at 57–58.

That issue is now ripe.  The Government argues that the Court should dismiss EPIC's FOIA claims against the Commission because it is not an "agency" subject to FOIA.  *See* Mot. to Dismiss FOIA Claims at 1 ("Partial Mot. to Dismiss"), ECF No. 23.  The Government also contends that even if the Commission is subject to FOIA, the Court should still dismiss two

---

[3]  All page citations are to the page numbers generated by the Court's CM/ECF system.

FOIA counts in the Complaint—Counts VI and VII. *See* Mem. in Supp. of Mot. to Dismiss

FOIA Claims ("Gov't Mem.") at 12–13, ECF No. 23-1. Count VI asserts a claim under FOIA

based on the failure of the Commission and DOD to comply with the statute's deadlines. Compl.

¶¶ 147–52. Count VII alleges that the Commission and DOD unlawfully denied expedited

processing of EPIC's FOIA requests. *Id.* ¶¶ 154–58.

## II.

The Government's motion to dismiss invokes Federal Rule of Civil Procedure 12(b)(6).

Partial Mot. to Dismiss at 1. To survive this motion, a complaint must contain sufficient factual

allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). The Court must "treat the complaint's factual allegations as

true and must grant the plaintiffs the benefit of all inferences that can be derived from the facts

alleged." *L. Xia v. Tillerson*, 865 F.3d 643, 649 (D.C. Cir. 2017) (cleaned up). But courts need

not accept the truth of legal conclusions or "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.

## A.

"By its terms, FOIA applies only to an 'agency.'" *CREW v. Office of Admin.*, 566 F.3d

219, 222 (D.C. Cir. 2009); *see* 5 U.S.C. § 552(a) ("Each agency shall make available to the

public information as follows[.]"). The Court concludes that the Commission is indeed an

"agency" subject to FOIA. Consider first the definition of "agency." The general definition is

"each authority of the Government of the United States." 5 U.S.C. § 551(1). FOIA specifies that

"'agency' as defined in section 551(1) of [title 5] includes *any* executive department, military

department, Government corporation, Government controlled corporation, *or other*

*establishment in the executive branch of the Government* (including the Executive Office of the President), or any independent regulatory agency." *Id.* § 552(f)(1) (emphasis added).

Now consider the NDAA, the Commission's organic statute. It decrees: "There is *established in the executive branch* an independent Commission to review advances in artificial intelligence[.]" Pub. L. No. 115-232, § 1051(a)(1) (emphasis added). That Commission "shall be considered *an independent establishment of the Federal Government as defined by section 104 of title 5*." *Id.* § 1051(a)(2) (emphasis added). Section 104 of title 5, meanwhile, explains that "[f]or purposes of this title, *'independent establishment' means . . . an establishment in the executive branch* . . . which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment." 5 U.S.C. § 104(1) (emphasis added). Congress could have hardly been clearer. Having said that FOIA applies to "*any* . . . establishment in the executive branch," *id.* § 552(f)(1) (emphasis added), it chose to call the Commission an "establishment in the executive branch."

This has happened before. Thirty years ago, Congress created the Defense Nuclear Facilities Safety Board. *See Energy Research Found. v. Def. Nuclear Facilities Safety Bd.*, 917 F.2d 581, 582 (D.C. Cir. 1990). The Board's organic statute declared: "There is hereby established an independent *establishment in the executive branch*." 42 U.S.C. § 2286(a). The Board claimed it was not subject to FOIA, but the D.C. Circuit disagreed. *See Energy Research*, 917 F.2d at 581. The court observed that § 2286(a) "used the same terms contained in § 552(f)'s description of 'agency.'" *Id.* at 582. "It would be a tall piece of statutory construction," the court continued, "to say that an 'establishment in the executive branch' as used in § 2286(a) is not an 'establishment in the executive branch' within the meaning of § 552(f)." *Id.* at 582–83. So too here.

There is more. *Energy Research* went beyond just the textual comparison. It looked at the whole of the Board's statute and found "nothing to indicate that Congress intended to excuse the Board from complying with FOIA." *Id.* at 583. The same is true here. *See* Pub. L. No. 115-232, § 1051. Indeed, there is powerful circumstantial evidence that Congress intended to impose FOIA on the Commission. In a different section of the NDAA, Congress created the Cyberspace Solarium Commission. *Id.* § 1652. But it did not establish this commission "in the executive branch" or use a cross-reference to 5 U.S.C. § 104. Congress said simply "[t]here is established a commission . . . known as the 'Cyberspace Solarium Commission.'" *Id.* § 1652(a)(1)–(2). A later subsection then declared that FOIA "shall not apply to the activities, records, and proceedings of the [Cyberspace Solarium] Commission." *Id.* § 1652(m)(2). So the Congress that created the AI Commission knew how to excuse it from FOIA, but did not do so.

The Government has no direct response to these textual arguments. *See* Reply in Supp. of Mot. to Dismiss FOIA Claims ("Gov't Reply") at 7–9, ECF No. 25. Instead, like a stranger offering candy to a child, the Government invites the Court not to read 5 U.S.C. § 552(f)(1) literally. *See infra* Section III.B. EPIC, meanwhile, points to several other "establishment[s] in the executive branch" that do comply with FOIA. Consider the language Congress used to create these entities, all of which have websites devoted to FOIA requests. *See* Opp'n to Defs.' Partial Mot. to Dismiss ("EPIC's Opp'n") at 21–22 & nn.5–6, 8–15, ECF No. 24.[4]

- "The Armed Forces Retirement Home is an independent *establishment in the executive branch*." 24 U.S.C. § 411(a).

---

[4] The Court has added emphasis for the pertinent language in each of these bullet points.

- "There is established, as an independent *establishment of the executive branch* of the United States Government, the Barry Goldwater Scholarship and Excellence in Education Foundation."  20 U.S.C. § 4703(a).

- "There is established, as an independent *establishment of the executive branch* of the United States Government, the Harry S. Truman Scholarship Foundation."  20 U.S.C. § 2004(a).

- "[T]here is established, as an independent *establishment of the executive branch*, the James Madison Memorial Fellowship Foundation."  20 U.S.C. § 4502(a).

- "There shall be an independent *establishment in the executive branch* of the Government to be known as the National Archives and Records Administration."  44 U.S.C. § 2102.

- "There is established a Nuclear Waste Technical Review Board that shall be an independent *establishment within the executive branch*."  42 U.S.C. § 10262.

- "The Office of Personnel Management is an independent *establishment in the executive branch*."  5 U.S.C. § 1101.

- "The Postal Regulatory Commission is an independent *establishment of the executive branch* of the Government of the United States."  39 U.S.C. § 501.

- "There is *established in the executive branch* an independent establishment to be known as the United States Interagency Council on Homelessness."  42 U.S.C. § 11311.

- "There is established, as an independent *establishment of the executive branch* of the Government of the United States, the United States Postal Service."  39 U.S.C. § 201.

Of course, an entity is not subject to FOIA simply because it has a FOIA website. Perhaps these ten bureaucracies welcomed the opportunity to open their internal deliberations to public inspection. But this list suggests that excusing the Commission from FOIA would be anomalous, to say the least.

**B.**

The Government urges that 5 U.S.C. § 552(f)(1) does not mean what it says. By its terms, § 552(f)(1) declares that "any . . . establishment in the executive branch" is subject to FOIA. But the Government says not so. *See* Gov't Mem. at 15. The Government contends that the caselaw *requires* a non-literal reading. *See id.* at 15–18. Its argument starts with *Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971). *See* Gov't Mem. at 14–15.

The question in *Soucie* was whether the Office of Science and Technology, a body in the Executive Office of the President, was subject to FOIA. 448 F.2d at 1070 n.2, 1071. At the time, the only relevant definition of "agency" was the one in § 551(1)—an "authority of the Government of the United States." *See id.* at 1073. Congress had not yet enacted § 552(f)(1). *Soucie* reasoned that the definition in § 551(1) "confers agency status on any administrative unit with substantial independent authority." *Id.* Since the Office of Science and Technology did not just "advise and assist the President," but also had an "independent function of evaluating federal programs," it *was* an "agency" under § 551(1), and thus subject to FOIA. *See id.* at 1075.

The relevance here of *Soucie*'s functional analysis is not immediately apparent. The decision came *before* the enactment of § 552(f)(1). It thus dealt with the general phrase "authority of the Government," not the more specific phrase "establishment in the executive branch." But, the Government says, the Court should consider the legislative history of the 1974 amendment that enacted § 552(f)(1). *See* Gov't Mem. at 15. Recall the text of that provision:

"'agency' as defined in section 551(1) of this title includes any . . . establishment in the executive branch of the Government (*including the Executive Office of the President*)." 5 U.S.C. § 552(f)(1) (emphasis added). The conference report for the 1974 amendment contains the following language:

> *With respect to the meaning of the term "Executive Office of the President"* the conferees intend the result reached in *Soucie v. David*, 448 F.2d 1067 (C.A.D.C. 1971). The term is not to be interpreted as including the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President.
>
> H.R. Conf. Rep. No. 93-1380, at 15 (1974) (emphasis added).

So the conferees intended to exempt some entities in the White House from FOIA, despite what § 552(f)(1) says. Back in the bacchanalian days of judicial idolization of legislative history, the Supreme Court relied on this report to hold that the telephone notes of an Assistant to the President were not "agency records" under FOIA. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 155–56 (1980). The D.C. Circuit joined in, holding that certain entities in the White House are not subject to FOIA. *See, e.g.*, *Rushforth v. Council of Econ. Advisers*, 762 F.2d 1038, 1040, 1043 (D.C. Cir. 1985). Cases like *Rushforth* apply *Soucie*'s functional analysis, asking whether the entity in the White House has the "sole function" of advising and assisting the President. *See id.* at 1042. If the answer is yes, it is exempt from FOIA. *See id.* at 1043. Formulated another way, the question is whether an entity in the White House "wield[s] substantial authority independently of the President." *CREW*, 566 F.3d at 222 (quoting *Sweetland v. Walters*, 60 F.3d 852, 854 (D.C. Cir. 1995)). Under this formulation, if the answer is no, the entity is exempt from FOIA. *See id.* at 223.

This is all straightforward enough. Whatever misgivings the Court may have about using legislative history, the Court is bound by the higher courts' repeated reliance on the conference report the Government identifies. The D.C. Circuit has cited that report to hold that not all

entities in the White House are subject to FOIA, despite the plain terms of § 552(f)(1). So this would be a much different case if the Commission were in the White House. But it is not. *See* Gov't Mem. at 16–19.

The Government instead derives a much broader principle from the conference report and the *Soucie* line of cases. According to the Government, *whenever* it would raise separation of powers concerns to say that an entity is subject to FOIA, the text of § 552(f)(1) must give way. *See id.* at 15–18. The canon of constitutional avoidance would kick in, and a court would have to apply *Soucie*'s functional test to determine whether the entity must comply with FOIA. *See id.* Here, the Government says, it *would* raise separation of powers concerns to say that the Commission is an "establishment in the executive branch" subject to FOIA. *See id.* at 18–19. The Government reasons that under *Soucie*'s functional test, the Commission does not exercise "substantial independent authority" and is thus exempt from FOIA. *See id.* at 20. This argument fails for many reasons.

*First*, the Government misunderstands the canon of constitutional avoidance. It is not a license to ignore unambiguous text. As the Supreme Court has recently reminded us, "constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) (cleaned up). "The canon has no application absent ambiguity." *Id.* (cleaned up). Ambiguity is absent here, *see supra* Section III.A, so the canon does not apply.

*Second*, *Energy Research* strongly supports EPIC's position. That decision came in 1990. By then, the D.C. Circuit had decided several cases that applied *Soucie*'s functional test. *See, e.g.*, *Rushforth*, 762 F.2d at 1040–41. Yet the textual analysis in *Energy Research*— identical to the textual analysis here—was dispositive. *See* 917 F.2d at 582–83. The

Government insists there was no need for constitutional avoidance in *Energy Research* because that case "did not raise any separation of powers issues." *See* Gov't Reply at 7. Perhaps, but that is irrelevant. The statutory text here, like the text at issue in *Energy Research*, is unambiguous. So constitutional avoidance does not apply here either. *See Nielsen*, 139 S. Ct. at 972.

To be sure, *Energy Research did* go on to apply *Soucie*, but only to note that the same result would obtain under a functional approach. *See* 917 F.2d at 584–85. The court was reluctant to apply *Soucie* at all. It noted that doing so would conflict with *Crooker v. Office of the Pardon Attorney*, 614 F.2d 825 (2d Cir. 1980). *See* 917 F.2d at 584. *Crooker* concluded that the language in the conference report for the 1974 amendment "applies as a limitation upon FOIA coverage *only* within the Executive Office of the President." 614 F.2d at 828 (emphasis added). It expressly rejected the Government's "attempt[] to apply this limitation throughout the executive branch." *Id. Crooker* and *Energy Research* dealt with entities *not* in the White House. *See id.* at 827–28; 917 F.2d at 582. So too here. The text of § 552(f)(1) is therefore dispositive.

In any event, as in *Energy Research*, the same result obtains under a functional analysis. "*Soucie* itself recognized that an entity in the federal government which 'investigates, evaluates and recommends' is an 'agency.'" *Energy Research*, 917 F.2d at 585 (quoting *Soucie*, 448 F.2d at 1073 n.15). The Commission "performs precisely these functions." *Id.* Its mandate is to evaluate advances in artificial intelligence, and it must consider many factors in conducting this review. *See* Pub. L. No. 115-232, § 1051(a)(1), (b)(1)–(2). The Commission has received several briefings from other government agencies. *See* Compl. Ex. H. Its final report will provide its "full findings and recommendations." *Id.*

In the Government's view, EPIC has conceded that the Commission is not an "agency" under a functional analysis. *See* Gov't Reply at 14–15. The Court is not so sure. True, EPIC

agreed with the Government's characterization of the Commission as "possess[ing] no independent authority" and "purely advisory in nature." EPIC's Opp'n at 30. But that was part of EPIC's argument for why congressional appointment of the Commission's members does not violate the Appointments Clause, U.S. Const. art. II, § 2, cl. 2. *See* EPIC's Opp'n at 29–30. EPIC never discussed whether the Commission is an "agency" under a functional test, since it argued that this test was irrelevant. *See id.* at 24–27.

It is also somewhat ironic for the *Government* to be insisting that the Commission possesses no "independent authority" under *Soucie*. Recall that the question is whether an entity exercises substantial authority *independent of the President*. *See CREW.*, 566 F.3d at 222. The Government apparently believes that the Commission does *not* wield this authority. Yet at the same time, the Government stresses that the President "exerts no control over the Commission's functioning." Gov't Mem. at 19.

As the functional test is not relevant here, the Court need not press the point more. Suffice it to say that the Commission's functions match the functions that were enough for *Energy Research* to call the Nuclear Board an "agency." *See* 917 F.2d at 585.

*Third*, the Government reads far too much into the *Soucie* line of cases. These cases do not hold that the functional test applies *whenever* imposing FOIA on an entity would raise separation of powers concerns. They stand for the much narrower proposition that a functional approach is apt when the question is whether an official or entity *close to the President* must comply with FOIA. "Failure to exempt presidential staff from the FOIA would raise a constitutional issue of separation of powers." *Ryan v. DOJ*, 617 F.2d 781, 788 n.19 (D.C. Cir. 1980). The reason is that imposing FOIA's disclosure obligations on these officials would be "a

potentially serious congressional intrusion into the conduct of the President's daily operations."

*Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 226 (D.C. Cir. 2013).[5]

That is what the 1974 conference report is about—the conferees wanted to excuse from

FOIA "the President's immediate personal staff or units in the Executive Office whose sole

function is to advise and assist the President."  H.R. Conf. Rep. No. 93-1380, at 15.  So the cases

that rely on this legislative history apply a functional analysis given a *specific* separation of

powers concern.  That specific concern is not at issue here.  This case does not involve

presidential staff or an entity in the White House.  Indeed, the Government stresses that the

Commission is *far removed* from the President.  It notes that most of the Commission's members

are congressionally appointed and that the President "exerts no control over the Commission's

functioning."  Gov't Mem. at 19.  The Government believes it would be *problematic* "if the

Commission were actually located within the executive branch."  *Id.* at 18.

On that view, the Commission must be either an agent of Congress or an independent

agency.  The Government fails to explain why it would violate separation of powers for

Congress to impose FOIA on either type of entity.  Nor is any constitutional problem apparent.

While Congress has yet to do so, surely it is free to impose the same transparency requirements

---

[5] The Government here has not challenged the application of FOIA to the Executive Branch more generally.  *Cf.* William P. Barr, Attorney Gen., U.S. Dep't of Justice, 19th Annual Barbara K. Olson Memorial Lecture (Nov. 15, 2019), https://www.justice.gov/opa/speech/attorney-general-william-p-barr-delivers-19th-annual-barbara-k-olson-memorial-lecture (remarks as prepared for delivery) ("[W]e all understand that confidential communications and a private, internal deliberative process are essential for <u>all</u> of our branches of government to properly function. . . .  Yet Congress has happily created a regime [under FOIA] that allows the public to seek whatever documents it wants from the Executive Branch at the same time that individual congressional committees spend their days trying to publicize the Executive's internal decisional process.  That process cannot function properly if it is public[.]").

on its own agents that it has imposed on the Executive Branch.  And imposing disclosure obligations on independent agencies would not intrude on the *President's* daily operations.

For these reasons, the D.C. Circuit's decision in *Judicial Watch* is distinguishable.  The Government never describes the facts of this case, but repeatedly cites it for the proposition that separation of powers always mandates a functional approach when interpreting FOIA.  *See id.* at 14–17, 19.  A close look reveals a more modest holding.

The question in *Judicial Watch* was whether White House visitor logs in the Secret Service's possession were "agency records" under FOIA.  *See* 726 F.3d at 211.  The Secret Service is not in the President's Executive Office, but the court held that some of these logs were *not* agency records—the logs that disclosed "the appointment calendars of the President and his close advisors."  *Id.*  One reason for this holding was that documents in the possession of the President and his advisers "are excluded from FOIA."  *See id.* at 224–25.  That much was clear from FOIA's implicit carveout for "the President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President."  *See id.* (quoting *Kissinger*, 445 U.S. at 156).  This carveout avoids "render[ing] FOIA a potentially serious congressional intrusion into the conduct of the President's daily operations."  *Id.* at 226.  Allowing plaintiffs to access the President's appointment calendars simply by targeting the Secret Service would have undermined this legislative scheme.  *See id.* at 225–27.  The court thought it implausible that Congress intended this loophole.  *See id.* at 225.

This case, by contrast, implicates no loophole.  The Government has not claimed that EPIC is trying to use its FOIA request to access the records of the President or his close advisers.  Recall that the Government emphasizes how the Commission is *far removed* from the President.  So the separation of powers concerns in *Judicial Watch* are irrelevant.

The Government insists, however, that the D.C. Circuit has at other times applied *Soucie*'s functional test to entities *not* in the White House. *See* Gov't Mem. at 16–17; Gov't Reply at 12 n.2. Like *Judicial Watch*, these cases are all distinguishable, and none of them requires the Court to apply a functional test here.

First up is the D.C. Circuit's holding in September 1974 that biomedicine research panels, called initial review groups, were not agencies subject to FOIA. *See Wash. Research Project, Inc. v. Dep't of Health, Educ. & Welfare*, 504 F.2d 238, 248 (D.C. Cir. 1974). The court applied *Soucie*'s functional test to determine whether an initial review group was an "authority of the Government" under 5 U.S.C. § 551(1). *See id.* at 245–48. This decision came two months *before* Congress amended FOIA to specify that "authority of the Government" included "any . . . establishment in the executive branch." *See* Pub. L. No. 93-502, 88 Stat. 1561, 1564 (Nov. 21, 1974). So the court had no occasion to consider whether a functional analysis is necessary when Congress has said that an entity is an "establishment in the executive branch." The Government's reliance on *Washington Research Project* is therefore misplaced.

Also misplaced is the Government's reliance on *Dong v. Smithsonian Institution*, 125 F.3d 877 (D.C. Cir. 1997). *Dong* held that the Smithsonian Institution was not an "agency" under the Privacy Act. *Id.* at 879. The Privacy Act "borrows the definition of 'agency' found in FOIA, 5 U.S.C. § 552(f)." *Id.* at 878. The Smithsonian is not in the Executive Office, yet the court applied *Soucie*'s functional approach. *See id.* at 879, 881. The court opined, moreover, that the method of appointment for the Smithsonian's Regents "would appear to violate the Constitution's separation of powers principles." *Id.* at 879. From this, the Government contends that a functional approach applies for units not in the Executive Office "when separation of

powers issues exist." Gov't Mem. at 16, 18–19. *Dong* does not stand for that proposition. Indeed, the Government's reading of *Dong* takes much of its analysis out of context.

It helps to read *Dong*, as with any opinion, from beginning to end. The decision began by observing that an "agency" under FOIA and the Privacy Act "encompasses not only all entities covered by § 552(f) but also all those described by § 551(1)." 125 F.3d at 879. So to be an "agency," an entity "must fit into *one* of the categories set forth either in § 552(f) *or* § 551(1)." *Id.* (emphasis added). The court first asked whether the Smithsonian fit into any categories in § 552(f)(1). *Id.* It considered two candidates: "establishment in the executive branch" and "Government controlled corporation." *Id.* But the Smithsonian was neither. *Id.* at 879–80.

Separation of powers was one reason the Smithsonian was *not* an "establishment in the executive branch." *See id.* at 879. Most members of the Smithsonian's Board of Regents were either congressional appointees or members of Congress. *Id.* The court commented that this method of appointing the Regents "would appear to violate the Constitution's separation of powers principles" if the Smithsonian "were to wield executive powers." *Id.*

The Government believes that the same reasoning applies here, since members of Congress appoint most of the Commission's members. *See* Gov't Mem. at 19. But *Dong* is distinguishable on this score. Congress did not specify whether the Smithsonian was an "establishment in the executive branch." *See* 20 U.S.C. § 41. So in answering that question, it made sense for *Dong* to consider non-textual factors such as separation of powers. *See* 125 F.3d at 879.

Only after concluding that the Smithsonian did not fit into any categories in § 552(f)(1) did the court apply *Soucie*'s functional approach. *See* 125 F.3d at 880. It did so to determine whether the Smithsonian was an "authority of the Government" under § 551(1). *See id.* at 880–

81. *Dong* simply did not make the step that the Government insists it made. The court did not apply a functional test *because* of separation of powers concerns. It applied a functional test because the Smithsonian was neither an "establishment in the executive branch" nor a "Government controlled corporation." *See id.* at 880.

Here, by contrast, Congress has *said* that the Commission is an "establishment in the executive branch." *See* Pub. L. No. 115-232, § 1051(a). That is the end of the matter. *See Energy Research*, 917 F.2d at 582–84. Non-textual factors such as separation of powers do not bear on whether the Commission is an "establishment in the executive branch."[6] The Court need not apply a functional approach to determine whether the Commission is an "authority of the Government" under § 551(1).

Indeed, *Dong* made clear that *Soucie*'s "substantial independent authority" test determines whether an entity is an agency "*for § 551(1) purposes*." *Id.* at 881 (emphasis added). The court observed that it had applied this test in two cases that did not involve entities in the White House, citing *Energy Research* and *Washington Research Project*. *See id.* But neither case requires a functional analysis when, as here, Congress has *said* that an entity is an "establishment in the executive branch," *i.e.*, one of the specific categories in § 552(f)(1). *See supra*.

---

[6] Also keep in mind that the interpretive question here is whether the Commission is subject to FOIA. If constitutional avoidance were relevant, it would be because of the separation of powers problems that might arise *if the Commission were subject to FOIA*. If the very existence or structure of the Commission is unconstitutional, that is a separate question not at issue here. The Government therefore goes beyond this case when it suggests that the method of appointing the Commission's members violates the Appointments Clause. *See* Gov't Mem. at 19. So too when it suggests that Congress has created an entity that unconstitutionally exercises executive powers. *See* Gov't Reply at 9–10 (citing *Metro. Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 269, 274 (1991)).

The Government next cites a pair of cases that concluded the Tax Court is not an "agency" subject to FOIA. Gov't Mem. at 17; *see Megibow v. Clerk of the U.S. Tax Court*, 432 F.3d 387, 388 (2d Cir. 2005) (per curiam) (adopting the reasoning of *Megibow v. Clerk of the U.S. Tax Court*, No. 04 Civ. 3321, 2004 WL 1961591 (S.D.N.Y. Aug. 31, 2004)); *Byers v. U.S. Tax Court*, 211 F. Supp. 3d 240 (D.D.C. 2016). *Megibow* examined the Tax Court's functions and determined that it was a court, rather than an entity in the Executive Branch. *See* No. 04 Civ. 3321, 2004 WL 1961591, at *5. *Byers*, meanwhile, had the benefit of a decision that had deemed the Tax Court "part of the Executive Branch" in the context of "a separation of powers analysis." *See* 211 F. Supp. 3d at 247 (citing *Kuretski v. Comm'r*, 755 F.3d 929, 943 (D.C. Cir. 2014)). Relying on *Kuretski*, the plaintiff in *Byers* argued that the Tax Court was necessarily an "establishment in the executive branch" subject to FOIA. *See id.* at 248. The court rejected that argument. *See id.*

Both *Megibow* and *Byers* are distinguishable. Those cases dealt with an exception to FOIA for "the courts of the United States." 5 U.S.C. § 551(1)(B). As *Byers* put it: "If the Tax Court is one of the 'courts of the United States,' it must be exempt from FOIA, even if it is part of the Executive Branch." 211 F. Supp. 3d at 248. The exception for "courts of the United States" is of course not relevant here.

In sum, an "agency" subject to FOIA includes "any . . . establishment in the executive branch." 5 U.S.C. § 552(f)(1). Congress chose to call the Commission an "establishment in the executive branch." *See* Pub. L. No. 115-232, § 1051(a). The Government has not convinced the Court that it should ignore what Congress said. And even under the Government's preferred functional approach, the Commission is still subject to FOIA. The Court thus concludes that the Commission must comply with FOIA.

## C.

The Government contends that the Court can dismiss Counts VI and VII at this stage even if the Commission is an agency. *See* Gov't Mem. at 12–13. Recall that Count VI asserts a claim under FOIA based on the failure of the Commission and DOD to comply with the statute's deadlines. Compl. ¶¶ 147–52. Count VII alleges that the Commission and DOD unlawfully denied expedited processing of EPIC's FOIA requests. *Id.* ¶¶ 154–58.

To begin, the Court sees nothing procedurally improper with the Government's choice to seek dismissal of Counts VI and VII in the present motion. The Court observes, however, that Counts VI and VII now have little, if any, practical relevance. The Government has *not* yet sought dismissal of Count VIII, which alleges that both the Commission and DOD have "wrongfully withheld agency records" under FOIA. *Id.* ¶¶ 160–61.[7] Since the Commission is an agency subject to FOIA, Count VIII against that entity will remain for now. EPIC's FOIA request was the first one the Commission received, *see* Tr. of Prelim. Inj. Hr'g at 31, so EPIC's request will automatically take precedence, even if it cannot meet the criteria for expedited processing. DOD, of course, already has thousands of other pending requests. Compl. Ex. C. But the Commission, not DOD, likely has the records that EPIC wants. *See* Tr. of Prelim. Inj. Hr'g at 32. So if this matter proceeds as a standard FOIA case against the Commission under Count VIII, EPIC would be on track to get as much relief as it can, no matter what the Court does with Counts VI or VII.

## 1.

In any event, the Court declines to dismiss either count now. Count VI alleges that both the Commission and DOD violated various statutory deadlines related to EPIC's FOIA requests.

---

[7] The Government is "separately answering" Count VIII. Partial Mot. to Dismiss at 1 n.1.

*See* Compl. ¶¶ 147–50.  The Government contends that the Court should dismiss Count VI because it is superfluous.  *See* Gov't Mem. at 26.  That is, violation of statutory deadlines is "not an independent basis for a claim," *Roseberry-Andrews v. DHS*, 299 F. Supp. 3d 9, 20 (D.D.C. 2018), but it is merely a reason why FOIA requesters can sue in the first place.  *See Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 189–90 (D.C. Cir. 2013).

Since violation of FOIA's deadlines goes to whether EPIC has exhausted its administrative remedies, *see id.*, Count VI is intertwined with the other two FOIA counts, including the yet-unanswered Count VIII.  Based on EPIC's allegations, it appears that the Commission and DOD violated at least three deadlines.  DOD did not make a "determination" on EPIC's FOIA request within 20 days.  Compl. ¶¶ 106–07, 149.  After DOD denied EPIC's request for expedited processing, it never made a "determination" on EPIC's administrative appeal of that denial.  *Id.* ¶¶ 109–10, 150.  And the Commission failed to make a "determination" on EPIC's request for expedited processing within ten days.  *Id.* ¶¶ 95, 97, 148.  Exhaustion of administrative remedies may yet become an issue once the Government answers Count VIII.  So the Court finds it best to hold off for now disposing of Count VI.[8]  If exhaustion does not become an issue, the Court will decide at a later point, if necessary, what to do with this count.  If the Government is correct that Count VI provides no independent basis for relief, it has nothing to fear from that claim in the meantime.  The Court will not dismiss Count VI now.

---

[8]  One paragraph in Count VI alleges that the Commission failed to make a timely determination on EPIC's September 11 FOIA request.  Compl. ¶ 147.  FOIA gives the agency at least 20 days to make this determination.  *See* 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i).  But EPIC filed its Complaint on September 27, only *16 days* after its September 11 request.  Compl. ¶ 95.  Based on this, the Government contends that the Court may dismiss as premature "Plaintiff's claim that the AI Commission did not respond timely to its FOIA request."  Gov't Mem. at 12 n.4.  At this stage, however, the Court declines to excise paragraph 147 from Count VI.  EPIC's rush to the courthouse may or may not be relevant to Count VIII, but the Government is not currently seeking dismissal of Count VIII.  *See* Partial Mot. to Dismiss at 1 n.1.

**2.**

As to Count VII, the Court holds that EPIC has stated a plausible claim that DOD and the Commission unlawfully denied expedited processing. A FOIA requester gets expedited processing if it "demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I). As relevant here, "compelling need" means "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II). The Government contends that EPIC fails to establish this sort of "urgency." *See* Gov't Mem. at 22–26.

To answer this question, "courts must consider at least three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity." *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001). EPIC has plausibly alleged that its requests met all three factors.

The third factor is the most straightforward. EPIC sought records about the work of the Commission, a federal agency, and EPIC asserts the records are also relevant to action that the President or Congress may take in response to the Commission's recommendations. *See* Compl. ¶¶ 91, 101. EPIC has thus plausibly alleged that its requests concerned "federal government activity."

The Court's conclusion is the same for the first and second factors. When EPIC requested expedited processing from DOD in February 2019, the Commission had not yet released its initial report, let alone its interim report. *See id.* ¶ 101. There was still no interim report when EPIC requested expedited processing from the Commission in September. *See id.* ¶ 90. EPIC claimed that the findings in these reports would affect government policy. *See id.* ¶¶ 91, 101. It was thus urgent that the public have access to these reports and related records,

such as briefing materials and minutes from meetings. *See id.* ¶¶ 90, 101. Access would allow EPIC and the public to understand and critique the Commission's work. The Commission will submit its "full findings and recommendations" in August 2020, *see* Compl. Ex. I, so if records remain out of public view, EPIC and the public might have little opportunity to influence the Commission's recommendations.

EPIC also makes other allegations that suggest the Commission's work was and remains a matter of "current exigency" and that delay in receiving records would compromise a "significant recognized interest." For example, the President has launched an "American AI Initiative" by Executive Order. *See* Compl. ¶¶ 35, 101; *id.* Ex. B at 4 & n.22. So the Government itself is prioritizing artificial intelligence. Yet the Commission "has operated almost entirely in secret." Compl. ¶ 59. And EPIC stresses that policy in this area could reshape privacy and human rights. *Id.* ¶¶ 5, 22–26. Evidence such as news articles and other contemporary documents may illuminate whether EPIC's FOIA requests meet the "urgency to inform" standard. The Court concludes only that EPIC has strung together enough allegations on this score to pass the plausibility threshold. The Court thus will not dismiss Count VII.

## IV.

For all these reasons, it is hereby

**ORDERED** that the Government's [23] Motion to Dismiss FOIA Claims is DENIED.

**SO ORDERED**.


Dated: December 3, 2019                                TREVOR N. McFADDEN, U.S.D.J.