**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) | |
| | ) | Case No. 19-cv-02906-TNM |
| *Plaintiff*, | ) ) | |
| | ) | Judge Trevor N. McFadden |
| v. | ) ) | |
| NATIONAL SECURITY COMMISSION ON ARTIFICIAL INTELLIGENCE, *et al.* | ) ) ) | |
| *Defendants*. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS FACA CLAIMS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATUTORY BACKGROUND OF FACA ......................................................................... 2

BACKGROUND ON THE AI COMMISSION ................................................................... 3

PROCEDURAL BACKGROUND ....................................................................................... 3

STANDARD OF REVIEW .................................................................................................. 5

ARGUMENT ....................................................................................................................... 6

I.      The Court Lacks Jurisdiction to Decide Plaintiff's Claims Directly Under FACA
        Because that Statute Does Not Provide a Private Right of Action. ................................. 6

II.     The Court Should Dismiss Plaintiff's Claims Under the APA. ......................................... 7

III.    The Court Should Dismiss Any Claims Plaintiff Purports to Bring Under the
        Mandamus or Declaratory Judgment Acts for Lack of Jurisdiction. ............................... 11

        A.   Plaintiff has Not Adequately Pleaded Claims Under the Declaratory Judgment
             or Mandamus Acts. .......................................................................................... 11

        B.   Even If Plaintiff had Adequately Pleaded Claims Under the Declaratory
             Judgment or Mandamus Acts, Those Claims Would Still Fail. .................................. 12

             1.   *The Declaratory Judgment Act Does Not Provide a Private Right of
                  Action.* ...................................................................................................... 12

             2.   *Plaintiff Cannot State a Claim for Alleged FACA Violations Under the
                  Mandamus Act.* ......................................................................................... 12

                  a.   *Plaintiff Cannot Establish a Violation of a Clear Duty Under FACA
                       Because the AI Commission is Not an Advisory Committee.* ......................... 13

                  b.   *Plaintiff Cannot Establish a Clear and Indisputable Right to Relief
                       Because Judicial Estoppel Bars Plaintiff from Arguing that the AI
                       Commission is Subject to FACA.* ........................................................... 15

CONCLUSION ..................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ............................................................................................ 6

*Ali v. Rumsfeld*,
649 F.3d 762 (D.C. Cir. 2011) .......................................................................... 12

*Allen v. C & H Distributors, L.L.C.*,
813 F.3d 566 (5th Cir. 2015) ............................................................................ 16

*Am. Civil Liberties Union v. Trump*,
266 F. Supp. 3d 133 (D.D.C. 2017) ............................................................ 12, 16

*Am. Hosp. Ass'n v. Burwell*,
812 F.3d 183 (D.C. Cir. 2016) .......................................................................... 13

*Amin v. Nyack School of Adult & Distance Educ.*,
710 F. Supp. 2d 80 (May 7, 2010) ...................................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 5

*Assoc. of Am. Physicians & Surgeons, Inc. v. Clinton*,
879 F. Supp. 103 (D.D.C. 1994) ........................................................................ 8

*B.D. v. District of Columbia*,
817 F.3d 792 (D.C. Cir. 2016) ............................................................................ 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................... 5, 12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................ 5

*Coal. for Underground Expansion v. Mineta*,
333 F.3d 193 (D.C. Cir. 2003) ...................................................................... 5, 16

*Ctr. for Biological Diversity v. Tidwell*,
239 F. Supp. 3d 213 (D.D.C. 2017) .............................................................. 8, 16

*Cummock v. Gore*,
180 F.3d 282 (D.C. Cir. 1999) ............................................................................ 2

*Elec. Privacy Info. Ctr. v. Drone Advisory Comm.*,
   369 F. Supp. 3d 27 (D.D.C 2019) ................................................................. 6, 7, 12

*Fornaro v. James*,
   416 F.3d 63 (D.C. Cir. 2005) ...................................................................... 12, 13

*Forsham v. Califano*,
   587 F.2d 1128 (D.C. Cir. 1978) .................................................................. 14, 16

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) ......................................................................................... 7

*Freedom Watch, Inc. v. Obama*,
   807 F. Supp. 2d 28 (D.D.C. 2011) ............................................................ 6, 7, 9

*Heartwood, Inc. v. U.S. Forest Serv.*,
   431 F. Supp. 28 (D.D.C. 2006) ................................................................. 7, 8, 9

*In re Cheney*,
   406 F.3d 723 (D.C. Cir. 2005) ....................................................................... 14

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   587 F. Supp. 2d. 29 (D.D.C. 2008) ................................................................. 5

*Intelsat USA Sales Corp. v. Juch-Tech, Inc.*,
   935 F. Supp. 2d 101 (D.D.C. 2013) ............................................................... 12

*Jiggetts v. District of Columbia*,
   319 F.R.D. 408 (D.D.C. 2017) ....................................................................... 11

*Judicial Watch, Inc. v. Dep't of Energy*,
   412 F.3d 125 (D.C. Cir. 2005) ...........................................................8, 10, 14, 16

*Judicial Watch, Inc. v. Fed. Hous. Agency*,
   646 F.3d 924 (D.C. Cir. 2011) ......................................................................... 9

*Judicial Watch, Inc. v. National Energy Policy Development Group*,
   219 F. Supp. 2d 20 (D.D.C. 2002) .................................................................. 10

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
   736 F. Supp. 2d 24 (D.D.C. 2010) .................................................................. 10

*Kimberlin v. Quinlan*,
   199 F.3d 496 (D.C. Cir. 1999) ......................................................................... 9

*Kissinger v. Reporters Comm. for Freedom of the Press*,
    445 U.S. 136 (1980) ........................................................................................................ 9

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996) ...................................................................................... 9

*Moses v. Howard Univ. Hosp.*,
    606 F.3d 789 (D.C. Cir. 2010) .................................................................................... 15

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*,
    557 F. Supp. 524 (D.D.C. 1983) .................................................................................. 8

*Nat'l Res. Def. Council v. Johnson*,
    488 F.3d 1002 (D.C. Cir. 2007) ............................................................................... 7, 8

*Natural Resources Defense Council v. Abraham*,
    223 F. Supp. 2d 162 (D.D.C. 2002) ........................................................................... 10

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ..................................................................................................... 15

*Papasan v. Allain*,
    478 U.S. 265 (1986) ....................................................................................................... 5

*Pegram v. Herdrich*,
    530 U.S. 211 (2000) ..................................................................................................... 15

*RFF Family P'ship, LP v. Ross*,
    814 F.3d 520 (1st Cir. 2016) ....................................................................................... 16

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) ....................................................................................................... 5

*Stephenson v. Malloy*,
    700 F.3d 265 (6th Cir. 2012) ...................................................................................... 16

*Trudeau v. Fed. Trade Comm'n*,
    456 F.3d 178 (D.C. Cir. 2006) ...................................................................................... 5

*West Virginia v. U.S. Dep't of Health & Human Servs.*,
    145 F. Supp. 3d 94 (D.D.C. 2015) ............................................................................... 5

iv

*Wolfe v. Weinberger*,
   403 F. Supp. 238 (D.D.C. 1975) ................................................................................ 9

**STATUTES**

5 U.S.C. app. 2 § 3 ................................................................................................ 2, 14

5 U.S.C. app. 2 § 4 ...................................................................................................... 7

5 U.S.C. app. 2 § 10 .......................................................................................... 8, 9, 16

5 U.S.C. app. 2 §§ 1-16 .............................................................................................. 1

5 U.S.C. § 551-706 ..................................................................................................... 1

5 U.S.C. § 552 ....................................................................................................... 4, 8

5 U.S.C. § 704 ............................................................................................................ 7

5 U.S.C. § 3161 ......................................................................................................... 14

28 U.S.C. § 2201 ........................................................................................................ 1

28 U.S.C. § 1361 ........................................................................................................ 1

28 U.S.C. § 1391 ........................................................................................................ 1

National Defense Authorization Act for Fiscal Year 2020 ("2020 NDAA"),
   Pub. L. 116-92 (2019) ........................................................................................ 3, 15

John S. McCain National Defense Authorization Act for Fiscal Year 2019 ("McCain Act"),
   Pub. L. No. 115-232, 132 Stat. 1636 (2018) .......................................... 3, 13, 14, 15

**RULES**

Fed. R. Civ. P. 8 ....................................................................................................... 11

Fed. R. Civ. P. 12 ............................................................................................. 2, 5, 10

**REGULATIONS**

5 C.F.R. § 531.403 .................................................................................................... 14

**OTHER AUTHORITIES**

H.R. Conf. Rep. 116-333 ............................................................................................ 3

Nat'l Security Comm'n on Artificial Intelligence, FAQ, https://www.nscai.gov/about/faq ........ 15

Disclosure of Advisory Comm. Materials, 12 U.S. Op. Off. Legal Counsel 73 (1988) ............... 16

## INTRODUCTION

Plaintiff Electronic Privacy Information Center ("Plaintiff") has filed a Complaint for Injunctive, Mandamus, and Declaratory Relief ("Complaint"), ECF No. 1, asserting, *inter alia*, claims premised on (1) violations of the open records provisions of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2 §§ 1-16, against Defendant National Security Commission on Artificial Intelligence ("AI Commission" or "Commission") and (2) violations of FACA's open meetings provision against the Commission and Defendants Eric Schmidt, in his official capacity as Chairman of the Commission, and Ylli Bajraktari, in his official capacity as Executive Director of the Commission (collectively, the "Commission Defendants").  Plaintiff purports to bring these claims under FACA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551-706, as well as referencing the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Mandamus and Venue Act of 1962 ("Mandamus Act"), 28 U.S.C. §§ 1361, 1391(e).

The Court should dismiss Plaintiff's claims under FACA and the APA.  There is no private right of action under FACA, so Plaintiff cannot rely on that statute to assert its claims. Plaintiff's APA claims based on FACA violations also fail, because the AI Commission is not an advisory committee.  Not only does the Commission fall outside the definition of such a committee because its members are all permanent part-time federal employees, but a government entity cannot be both an agency subject to suit under the APA and an advisory committee subject to FACA.  Plaintiff's APA claims are therefore internally inconsistent.

Further, Plaintiff cannot salvage its claims by relying on its passing references to the Declaratory Judgement and Mandamus Acts.  Plaintiff has not adequately pleaded any claims under those statutes and, even were such claims properly before the Court, they would fail.  The Declaratory Judgment Act only expands the scope of relief a court may provide; it does not create a cause of action.  Plaintiff also has no entitlement to relief under the Mandamus Act both

because the AI Commission is not an advisory committee and because Plaintiff is judicially estopped from arguing to the contrary.

Claims I through V of the Complaint should therefore be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## STATUTORY BACKGROUND OF FACA

"Congress passed FACA in 1972 to address whether and to what extent committees, boards, and councils should be maintained to advise Executive Branch officers and agencies." *Cummock v. Gore*, 180 F.3d 282, 284 (D.C. Cir. 1999) (internal citation omitted).  FACA is intended to ensure that the Federal Government receives expert advice, ideas, and opinions without wasting public funds or permitting self-interest to influence committees' recommendations.  *See id.* at 284-85.  Toward this end, FACA imposes "a series of requirements governing the creation and operation of bodies falling within the Act's definition of 'advisory committee.'"  *Id.* at 285 (citing 5 U.S.C. app. 2 § 3(2)).  Among these requirements are obligations to promote transparency in advisory committees' handling of documents and meetings.  5 U.S.C. app. 2 § 10.

To be an advisory committee subject to FACA, a "committee . . . or other similar group, or any subcommittee or other subgroup thereof" must be "(A) established by statute or reorganization plan, or (B) established or utilized by the President, or (C) established or utilized by one or more agencies."  5 U.S.C. app. 2 § 3(2).  However, FACA does not apply to "any committee that is composed wholly of full-time, or permanent part time, officers or employees of the Federal Government" or "any committee that is created by the National Academy of Sciences or the National Academy of Public Administration."  *Id.*

2

# BACKGROUND ON THE AI COMMISSION[1]

Congress created the AI Commission as part of the John S. McCain National Defense Authorization Act for Fiscal Year 2019 ("McCain Act"), Pub. L. No. 115-232, § 1051, 132 Stat. 1636, 1962-65 (2018).  Under the McCain Act, "the members of the Commission . . . [are] Federal employees," *id.* § 1051(a)(7), "appointed for the life of the Commission," *id.* § 1051(a)(6).  Although the Commission was originally set to terminate on October 1, 2020, *id.* § 1051(e), the following year Congress extended the life of the Commission until October 1, 2021.  National Defense Authorization Act for Fiscal Year 2020 ("2020 NDAA"), Pub. L. 116-92, § 1735 (2019).

Notably, in the conference report accompanying the extension of the AI Commission's lifespan, "[t]he conferees acknowledge[d] the President of the United States' signing statement of August 13, 2018, that the Commission [would] be treated as an independent entity, separate from the executive branch due to its legislative branch appointees and the necessity to uphold the separation of powers."  H.R. Conf. Rep. 116-333, at 1473.  The report also confirmed that "[t]he original intent of the conferees was to create a Commission . . . with status as an independent entity."  *Id.*

# PROCEDURAL BACKGROUND

Plaintiff filed the instant action on September 27, 2019, against the AI Commission Defendants and Defendant U.S. Department of Defense ("DOD").  Compl. at 1.  The Complaint

---

[1]  In light of the prior briefing in connection with the Freedom of Information Act claims and in the interest of brevity, Defendant presume the Court's general familiarity with McCain Act and the AI Commission and recite only the pertinent information here.  To the extent further background is needed, Defendant refers the Court to the relevant background section of the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss FOIA Claims, ECF 23-1 at 1-3.

asserted eight counts based on alleged violations of FACA, the APA, and the Freedom of Information Act ("FOIA"), 5 U.SC. § 552.  Compl. ¶¶ 112-163.  Plaintiff named DOD as a defendant only in its FOIA claims.  *Id.* at 32-34 (headers to Counts VI, VII, and VIII).

The day it filed its Complaint, Plaintiff also moved for a preliminary injunction to compel expedited processing of its February 22, 2019 FOIA request to DOD and its September 11, 2019 FOIA request to the AI Commission.  Pl.'s Mot. for a Preliminary Injunction, ECF No. 4.  The Court denied Plaintiff's preliminary injunction motion on October 16, 2019, and ordered Defendants to file a partial motion to dismiss on the question of whether the AI Commission is an agency within the meaning of the FOIA statute.  Order, ECF NO. 18.

In accordance with the Court's October 16, 2019 order, DOD and the AI Commission moved to dismiss the FOIA claims against them, including the claim alleging that the Commission wrongly failed to grant Plaintiff's request for expedited processing.  Mem. of Pts. & Authorities in Supp. of Defs.' Mot. to Dismiss FOIA Claims, ECF No. 23-1, at 1, 16-18. Following briefing, the Court denied Defendants' motion, holding that the Commission was an agency subject to FOIA and declining to dismiss the claims concerning denial of expedited processing.  Mem. Op. & Or., ECF No. 26, at 20-23.  The Court then ordered Defendants to respond to the remaining claims in the Complaint.  Minute Order of Dec. 20, 2019.

On January 27, 2020, the AI Commission notified Plaintiff that it had granted Plaintiff's earlier request for expedited processing and provided Plaintiff with the first set of documents responsive to Plaintiff's FOIA request.  *See* Exhibit A (Jan. 27, 2020 FOIA Production Letter) (attached hereto); Exhibit B (Jan. 27, 2020 Expedited Processing Letter).  The Commission Defendants now move to dismiss Counts I through V, all of which are based on alleged violations of FACA.  Compl. ¶¶ 112-145.

4

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action when a complaint fails "to state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The Court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).  For a claim to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when the plaintiff fails to meet his or her burden of establishing subject-matter jurisdiction.  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 587 F. Supp. 2d. 29, 33-34 (D.D.C. 2008).  When reviewing a facial challenge under Rule 12(b)(1), courts apply the same standard to jurisdictional allegations that they apply to factual allegations under Federal Rule of Civil Procedure 12(b)(6).  *See West Virginia v. U.S. Dep't of Health & Human Servs.*, 145 F. Supp. 3d 94, 98-99 (D.D.C. 2015), *aff'd,* 827 F.3d 81 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1614 (2017).  However, factual challenges to jurisdiction—which may be considered without converting a motion to dismiss into a motion for summary judgment, *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003)—are considered under the standard for summary judgment.  *Amin v. Nyack School of Adult & Distance Educ.*, 710

F. Supp. 2d 80, 82 (May 7, 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

(setting out the summary judgment standard).

## ARGUMENT

**I.    The Court Lacks Jurisdiction to Decide Plaintiff's Claims Directly Under FACA Because that Statute Does Not Provide a Private Right of Action.**

When a statute does not provide a private right of action, federal courts lack jurisdiction

to adjudicate claims brought under that statute.  *See B.D. v. District of Columbia*, 817 F.3d 792,

802 (D.C. Cir. 2016); *see also Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 32-33

(D.D.C. 2011).  Here, the Court lacks jurisdiction over Counts I and IV, asserting "[v]iolation[s]

of the FACA" statute against the Commission Defendants, because FACA does not provide a

private right of action.  Compl. at 28, 31.

"For a cause of action to exist, a plaintiff must demonstrate that the statute under which it

is attempting to proceed reflects Congressional intent to create a private remedy."  *Freedom*

*Watch, Inc.*, 807 F. Supp. 2d at 32 (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).

The job of the federal courts is therefore "to interpret the statute Congress has passed to

determine whether it displays an intent to create not just a private right but also a private

remedy."  *Sandoval*, 532 U.S. at 286.  In applying this test, "several courts in this district have

determined that the FACA does not create a private right of action because there is no evidence

of Congressional intent to confer a private remedy for FACA violations."  *Freedom Watch, Inc.*,

807 F. Supp. 2d at 32 (listing cases).

Because FACA does not provide a private right of action, the Court should dismiss

Counts I and IV for lack of subject matter jurisdiction.  *See Elec. Privacy Info. Ctr. v. Drone*

*Advisory Comm.*, 369 F. Supp. 3d 27, 36-38 (D.D.C 2019) (rejecting Plaintiff's argument that

FACA creates a private right of action and dismissing its FACA claims for lack of subject matter jurisdiction).

## II.     **The Court Should Dismiss Plaintiff's Claims Under the APA.**

In Counts II, III, and V of the Complaint, Plaintiff asserts that the AI Commission's alleged failures to comply with FACA's open meeting and open records requirements constitute "[v]iolation[s] of the APA."  Compl. at 29-30, 32 (headings for counts II, III, and V).  These counts fail because only agencies can be sued under the APA and an entity cannot be an agency as well as an advisory committee.  Plaintiff has already argued and prevailed on its argument that the Commission is an agency subject to FOIA, and it therefore cannot state a FACA claim premised on the Commission also being an advisory committee.

The APA provides a limited waiver of sovereign immunity to permit judicial review only of "final agency action[s]," 5 U.S.C. § 704, so actions by government entities other than federal agencies are not subject to APA review.  *See Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992).  FACA, on the other hand, applies only to federal advisory committees.  5 U.S.C. app. 2 § 4(a).  "An entity cannot be at once both an advisory committee and an agency."  *Elec. Privacy Info. Ctr.*, 369 F. Supp. 3d. at 41 (quoting *Freedom Watch, Inc.*, 807 F. Supp. 2d at 33); *see also Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 36 (D.D.C. 2006).  "Thus, the APA does not provide a jurisdictional grant for . . . FACA claim[s] against [a] committee or its members . . . ."  *Freedom Watch, Inc.*, 807 F. Supp. 2d at 33.

Indeed, a ruling that a government entity is subject to both FOIA and FACA's open records requirements would impose independent, mutually exclusive obligations.  *See Nat'l Res. Def. Council v. Johnson*, 488 F.3d 1002, 1003 (D.C. Cir. 2007) ("[T]he government's duty to disclose [under FACA] is . . . independent of FOIA." (internal citation omitted)).  The following

are only some of the many differences between an agency's obligations under FOIA and an advisory committee's obligations under FACA.

*First*, FOIA and FACA apply to different documents.  Documents "created or maintained" by advisory committees are "not 'agency records' within the meaning of the FOIA." *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 132 (D.C. Cir. 2005) (holding that the records agency "employees created or obtained while on detail" to an advisory committee were not subject to FOIA).  Also, although FOIA applies to all agency records, 5 U.S.C. § 552(a)(3)(A), FACA applies only to "documents which were made available to or prepared for or by each advisory committee," *id.* app. 2 § 10(b).  This limitation means that "staff work" or other documents not directly considered by the committee members are not subject to FACA's open records requirement.  *See Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 557 F. Supp. 524, 529 (D.D.C. 1983), *aff'd*, 711 F.2d 1071 (D.C. Cir. 1983); *see also Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 228 (D.D.C. 2017); *Assoc. of Am. Physicians & Surgeons, Inc. v. Clinton*, 879 F. Supp. 103, 105 (D.D.C. 1994).  FOIA contains no equivalent exception.  *See generally* 5 U.S.C. § 552.

*Second,* although "FACA incorporates the FOIA exemptions," *Nat'l Res. Def. Council*, 488 F.3d at 1003, the exemptions apply differently to agencies and advisory committees. "Exemption 5 of the FOIA provides that an agency is not required to disclose 'inter-agency or intra-agency memorandums or letters' concerning its deliberative process.  This exemption is not available to documents revealing an advisory committee's deliberative process because the exemption applies only to agencies."  *Heartwood, Inc.*, 431 F. Supp. 2d at 36 (citation omitted). *But see id.* ("Documents produced by an advisory committee that are 'relied upon by the *agency*

in the court of decision-making,' however, could be considered an integral part of the deliberative process and entitled to protection under Exemption 5." (citation omitted)).

*Third*, an agency's disclosure obligations under FOIA are limited in time, unlike an advisory committee's disclosure obligations under FACA.  Under FOIA, an agency must produce "only records the agency controls at the time of the request."  *Judicial Watch, Inc. v. Fed. Hous. Agency*, 646 F.3d 924, 926 (D.C. Cir. 2011).  FACA requires continual supplementation of the documents that must be made available for public inspection.  5 U.S.C. app. 2 § 10(b).

*Fourth*, the statutes create different obligations with regard to the creation of documents. FOIA does not require agencies to create any records to chronicle its activities.  *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980).  FACA, by contrast, mandates the creation of "[d]etailed minutes of each meeting," that contain statutorily prescribed information about the meeting.  5 U.S.C. app. 2 § 10(c).

Because "[a]n advisory committee cannot have a double identity as an agency," Plaintiff's APA claims should be dismissed.  *Heartwood, Inc.*, 431 F. Supp. 2d at 36 (quoting *Wolfe*, 403 F. Supp. at 242) (internal quotation marks omitted).  From the outset of this matter, Plaintiff could logically claim either that the AI Commission is an agency, in which case it would not be subject to FACA, or that the Commission is an advisory commission, in which case there would be no claim under the APA.  In either case, Plaintiff's APA claims should be dismissed.[2]  *See Freedom Watch, Inc.*, 807 F. Supp. 2d at 33 (dismissing APA claims brought under FACA).

---

[2]  Here, the Court's ruling that the AI Commission is an agency for purposes of FOIA controls in this case.  *See Kimberlin v. Quinlan*, 199 F.3d 496, 500 (D.C. Cir. 1999) (The law-of-the-case doctrine rests on a simple premise: 'the *same* issue presented a second time in the *same case* in

This inescapable conclusion is in no way contrary to the cases in which courts have held that an agency's involvement with an advisory committee may permit a plaintiff to assert a valid APA claim against the agency for violations of FACA.  *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 30-31 (D.D.C. 2010) (holding that plaintiff could bring an APA claim against an agency based on alleged FACA violations but dismissing the claim because the agency had insufficient involvement with the entity at issue to implicate FACA). For instance, in *Department of Energy*, the D.C. Circuit concurred with the district court's holding that a government entity was an advisory committee and therefore not an agency subject to FOIA but found that documents created or obtained by a committee member who was an agency employee were agency records subject to FOIA.  412 F.3d at 129, 133.  In a related case before this Court, Judge Sullivan similarly held that an APA claim could be brought against an agency when agency officials served on an advisory committee and allegedly caused the committee to violate its open meeting obligations under FACA.  *Judicial Watch, Inc. v. National Energy Policy Development Group*, 219 F. Supp. 2d 20, 36-40 (D.D.C. 2002), *vacated on other grounds by Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 524 U.S. 367 (2004).  Likewise, in *Natural Resources Defense Council v. Abraham*, 223 F. Supp. 2d 162 (D.D.C. 2002), the court held that an agency's practice of convening advisory committees without complying with FACA was actionable under the APA.  *Id.* at 193-94.

In the matter at hand, however, there is no similar agency involvement in an advisory committee.  Plaintiff did not name an agency—other than the AI Commission itself—in its APA

---

the *same court* should lead to the *same result*.'" (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc)).  Thus, the proper vehicle for bringing these claims is the APA; Plaintiff just fails to state a claim.  As such, Counts II, III, and V should be dismissed under Federal Rule of Civil Procedure 12(b)(6).  APA claims against non-agencies, by contrast, would be barred by sovereign immunity and properly dismissed under Rule 12(b)(1).

claims.  Compl. at 29, 30, 32 (headings of Counts II, III, and V).  Moreover, there are no

allegations that the Department of Defense, the only other agency mentioned in the Complaint,

had any involvement in the Commission's allegedly improper operations or practices.  *See*

*generally id.*  Thus, Plaintiff has not alleged a facially valid APA claim.

**III.**     **The Court Should Dismiss Any Claims Plaintiff Purports to Bring Under the**
             **Mandamus or Declaratory Judgment Acts for Lack of Jurisdiction.**

Plaintiff's Complaint contains a single paragraph in which Plaintiff characterizes this

case as arising under the Declaratory Judgment Act and the Mandamus Act in addition to FACA,

the APA, and FOIA.  Compl. ¶ 1.  To the extent Plaintiff intended to bring any counts under the

Declaratory Judgment or Mandamus Acts based on the AI Commission's purported FACA

violations, those claims should be dismissed for failure to state a claim or, in the alternative, for

lack of jurisdiction.

     A.     Plaintiff has Not Adequately Pleaded Claims Under the Declaratory Judgment or
            Mandamus Acts.

Federal Rule of Civil Procedure 8(a)(2) requires "[a] pleading that status a claim for relief

[to] contain . . . a short and plain statement of the claim showing that the pleader is entitled to

relief."  "And if a complaint fails to comport with the standards of Rule 8, the court may dismiss

the pleading or the action."  *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 413 (D.D.C. 2017).

Here, the only mention of either the Declaratory Judgment Act or Mandamus Act as a

cause of action is in the first paragraph of the Complaint.  *See* Compl. ¶ 1.  Although the

Complaint elsewhere requests declaratory judgment and mandamus as forms of relief under

FOIA, FACA, and the APA, those references are never as independent causes of action.  *See id.*

¶¶ 118, 139, at 34-35 (paragraphs A, D, H of requested relief).  As such, it is impossible to know

what counts Plaintiff intended to pursue under these statutes or the specific allegations that

would support claims under them.  Plaintiff has therefore failed to provide Defendants "fair notice of what the . . . claim is and the grounds upon which it rests" and is not entitled to have any claims under the Declaratory Judgment Act or Mandamus Act adjudicated by the Court. *Twombly*, 550 U.S. at 555.

> B.  <u>Even If Plaintiff had Adequately Pleaded Claims Under the Declaratory Judgment or Mandamus Acts, Those Claims Would Still Fail.</u>

Even excusing Plaintiff from its pleading obligations and interpreting the Complaint to assert every count in the Complaint under the Declaratory Judgment and Mandamus Acts and every factual allegation to be made in support of those counts, Defendants would still be entitled to dismissal of Plaintiff's claims that are based on alleged violations of FACA.

> 1.  *The Declaratory Judgment Act Does Not Provide a Private Right of Action.*

Any claims Plaintiff sought to bring under the Declaratory Judgment Act would fail because "[t]he Declaratory Judgment Act does not provide an independent source of federal jurisdiction" and therefore "'is not cognizable as a separate cause of action.'" *Elec. Privacy Info. Ctr..*, 369 F. Supp. 3d at 38 (quoting *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013)).  *See also Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011). Rather, the Act "provides a judicial remedy premised on another judicially remediable right." *Elec. Privacy Info. Ctr.*, 369 F. Supp. 3d at 38.  As a result, even assuming that Plaintiff had adequately pleaded an independent claim for relief based on the Declaratory Judgment Act, the Court should dismiss it because the Act does not provide Plaintiff with a cause of action.  *See id.*

> 2.  *Plaintiff Cannot State a Claim for Alleged FACA Violations Under the Mandamus Act.*

Insofar as Plaintiff relies on the Mandamus Act to seek to redress the Commission Defendants' alleged violations of FACA, Defendants are also entitled to dismissal of those

claims.  "Mandamus is a 'drastic remedy, to be invoked only in extraordinary circumstances.'" *Am. Civil Liberties Union v. Trump*, 266 F. Supp. 3d 133, 139 (D.D.C. 2017) (quoting *Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005)).  The party seeking mandamus has the burden of showing "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists."  *Id.* (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016)).  A plaintiff's failure to meet its burden as any of these requirements means that the plaintiff cannot establish jurisdiction.  *Id.* "Even when these requirements are met, however, 'a court may grant relief only when it finds compelling equitable grounds . . . .  The party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable.'"  *Id.* (quoting *Am. Hosp. Ass'n*, 812 F.3d at 189).

Plaintiff cannot meet its burden here because it can show neither a violation of a clear duty to act nor a clear and indisputable right to relief.  Indeed, although lesser showings would be sufficient to defeat a Mandamus Act claim in this case, Plaintiff cannot show that the AI Commission has any duty to act under FACA or that Plaintiff has any right to seek relief for FOIA violations.

     a.  *Plaintiff Cannot Establish a Violation of a Clear Duty Under FACA Because the AI Commission is Not an Advisory Committee.*

The AI Commission is not an advisory committee subject to FACA.  The Court has ruled that the Commission is an agency subject to FOIA, so it cannot simultaneously be an advisory committee subject to FACA.  Further, because the members of the Commission are permanent part-time federal employees, the Commission falls outside FACA's statutory definition of an advisory committee.

As an initial matter, the Court has already ruled that the AI Commission is an agency subject to FOIA by virtue of it being an "establishment in the executive branch."  Mem. Op. & Or., ECF No. 26, at 19 (discussing McCain Act § 1051(a)(2)).  As discussed above, the Commission cannot be both an agency and an advisory committee.  *See* § II, *supra*.  Thus, the Commission cannot be an advisory committee subject to FACA.  *See Dep't of Energy*, 412 F.3d at 129, 133; *Forsham v. Califano*, 587 F.2d 1128, 1135, 1136 (D.C. Cir. 1978) (holding that an advisory committee was not subject to FOIA).  Plaintiff therefore cannot show a clear violation of a duty under FACA.  *See In re Cheney*, 406 F.3d 723, 731 (D.C. Cir. 2005) (no "clear and indisputable duty" under FACA sufficient for mandamus when entity not an advisory committee).

Furthermore, FACA does not apply to government entities "composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government," like the AI Commission.  5 U.S.C. app. 2 § 3(2)(C)(i).  By statute, "the members of the Commission [are] deemed to be Federal employees."  McCain Act § 1051(a)(7).  Specifically, because the Commission is a temporary organization,[3] the commissioners "are in the excepted service of the civil service."  5 U.S.C. § 3161(b)(3).  Although the Commission itself is a temporary organization, that does not prevent the commissioners from being permanent part-time employees.  For purposes of categorizing federal employment, a "[p]ermanent position means a position filled by an employee whose appointment is not designated as temporary by law and does not have a definite time limitation of one year or less."  5 C.F.R. § 531.403 (italics omitted).

---

[3]  The Commission meets the statutory definition of a temporary organization because it was "established by law . . . for a specific period not in excess of three years for the purpose of performing a specific study" and will be "terminated upon the completion of the study."  5 U.S.C. § 3161(a).

The McCain Act does not specifically designate the commissioners as temporary, and their appointment is for the life of the Commission.  McCain Act §§ 1051(a)(6), (a)(7).  Even before its life was extended for a year in the 2020 NDAA, those appointments were for an almost two year term.[4]  Thus, although not full-time employees in the traditional sense, the commissioners are nonetheless permanent part-time employees.  FACA therefore does not apply to the Commission.

      b.   *Plaintiff Cannot Establish a Clear and Indisputable Right to Relief Because Judicial Estoppel Bars Plaintiff from Arguing that the AI Commission is Subject to FACA.*

"[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'"  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)).  Although judicial estoppel is an equitable doctrine that cannot be reduced to a specific set of factors, "several factors typically inform the decision whether to apply the doctrine in a particular case."  *Id.*  These include:  (1) whether "a party's later position [is] 'clearly inconsistent' with its earlier position" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on

---

[4]  The Commission was established in August 2018, with the commissioners being appointed in October and November of that year.  Nat'l Security Comm'n on Artificial Intelligence, FAQ, https://www.nscai.gov/about/faq (last visited Jan. 23, 2020).  It was originally set to terminate October 1, 2020, meaning that the commissioners were appointed for at least one year and ten months.  McCain Act § 1051(e).  Those appointments have since been extended to at least two years and ten months.  2020 NDAA § 1735.

the opposing party if not estopped."  *Id.* at 750 (citation omitted); *see also Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 797 (D.C. Cir. 2010).

Here, all three factors weigh in favor of preventing Plaintiff from advancing its claims that the AI Commission is subject to FACA when it has already prevailed on its earlier position that the Commission is an agency subject to FOIA.  As discussed above, the two positions are inconsistent with each other because an entity cannot be both an agency and an advisory committee.  *See* § II, *supra.*  Consequently, advisory committees are not subject to FOIA.  *See Dep't of Energy*, 412 F.3d at 129, 133; *Forsham*, 587 F.2d at 1135-36.  Plaintiff succeeded in persuading the Court of its earlier position that the Commission is an agency subject to FOIA, as is evident from the Court's December 3, 2019 Memorandum Opinion and Order.[5]  And, Plaintiff has now derived an advantage for itself and imposed a detriment on the Commission as a result of the Court's ruling.  On January 27, 2020, the Commission granted Plaintiff's request for expedited processing and produced staff-level records not shared with any Commission members.[6]  Ex. A; Ex. B.  These are benefits to which Plaintiff would not be entitled under the FACA open records provision.[7]  Permitting Plaintiff now seek to extract additional benefits and

---

[5]  It is well-established that a court accepting a party's position in a non-final order meets this judicial estoppel factor.  *See RFF Family P'ship, LP v. Ross*, 814 F.3d 520, 528 (1st Cir. 2016); *Allen v. C & H Distributors, L.L.C.*, 813 F.3d 566, 572–73 (5th Cir. 2015); *Stephenson v. Malloy*, 700 F.3d 265, 267 (6th Cir. 2012).

[6]  Because the availability of mandamus relief is a jurisdictional issue, *see Am. Civil Liberties Union*, 266 F. Supp. 3d at 139, the Court can consider facts outside the Complaint without converting the Commission Defendants' instant motion to dismiss into a motion for summary judgment, *see Coal. for Underground Expansion*, 333 F.3d at 198.

[7]  *See* 5 U.S.C. app. 2 § 10(b) (containing no provision for expedited disclosure of documents); *Ctr. for Biological Diversity*, 239 F. Supp. 3d at 228 ("materials produced by *staff* of advisory committees, as opposed to *members* of those committees, may not need to be disclosed under section 10(b)"); *see also* Disclosure of Advisory Comm. Materials, 12 U.S. Op. Off. Legal Counsel 73, 75-76 (1988) ("FACA compels disclosure [only] of a limited subset of information, namely the material used by the advisory committee.").

impose additional burdens by advancing the mutually exclusive theory that the Commission is also an advisory committee under FACA would be precisely the kind of unfair gamesmanship that the doctrine of judicial estoppel is intended to prevent.

Because any claim under the Mandamus Act would be barred by the doctrine of judicial estoppel, Plaintiff cannot show that it has a clear and indisputable right to relief.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims against the Commission Defendants alleging FACA violations.

Dated:  January 31, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ *Gary D. Feldon*
GARY D. FELDON
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
*Via Special Delivery*: 1100 L St. NW, Room 11104
Washington, DC 20005
*Via Mail*: P.O. Box 883, Washington, DC 20044
Tel: (202) 514-4686
Fax: (202) 616-8460
E-mail: gary.d.feldon@usdoj.gov

*Attorneys for Defendants*

17