**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER ) ) ) *Plaintiff*, ) ) v. ) ) NATIONAL SECURITY COMMISSION ON ARTIFICIAL INTELLIGENCE, *et al.* ) ) ) *Defendants*. ) | Case No. 19-cv-02906-TNM Judge Trevor N. McFadden |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FACA CLAIMS AND OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I.  Plaintiff has Abandoned Its Claims Brought Directly Under FACA and Any Claims Brought Under the Declaratory Judgment Act. ..................................................... 2

II. The Court Should Dismiss Plaintiff's Claims Under the APA. .......................................... 2

    A. A Government Entity Cannot be Both an Agency and an Advisory Committee. ............................................................................................................ 2

       1. *The Different Application of FOIA Exemption 5 Demonstrates that a Government Entity Cannot be Both an Agency and an Advisory Committee.* ............... 3

       2. *Additional Evidence of Legislative Intent Further Demonstrates that Agencies and Advisory Committees are Distinct Types of Government Entities.* ......................... 6

    B. The AI Commission Does Not Meet the Statutory Definition of an Advisory Committee Because Its Members are Permanent, Part-Time Employees. ................... 8

       1. *The AI Commission Members are Permanent Employees of a Temporary Organization.* ......................................................................................................... 9

       2. *The Members of the AI Commission are Part-Time Federal Employees.* .................. 11

    C. The Absence of a Specific Exemption from FACA in the McCain Act Does Not Mean Congress Intended the AI Commission to be an Advisory Committee. .................................................................................................................. 12

III. The Court Should Dismiss Any Claims Plaintiff Purports to Bring Under the Mandamus Act. ................................................................................................................. 13

CONCLUSION ........................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**CASES**

*Am. Hosp. Ass'n v. Burwell*,
   812 F.3d 183 (D.C. Cir. 2016) .................................................................................... 13, 14

*Assoc. of Am. Physicians & Surgeons, Inc. v. Clinton*,
   997 F.2d 898 (D.C. Cir. 1993) ............................................................................................ 10

*Clinton v. City of New York*,
   524 U.S. 417 (1998) ............................................................................................................ 8

*Comm. for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) .......................................................................................................... 11

*Duncan v. Walker*,
   533 U.S. 167 (2001) ............................................................................................................ 6

*Elec. Privacy Info. Ctr. v. Drone Advisory Comm.*,
   369 F. Supp. 3d 27 (D.D.C. 2019) ................................................................................... 2, 4

*Fed. Deposit Ins. Corp. v. Phila. Gear Corp.*,
   476 U.S. 426 (1986) .......................................................................................................... 10

*Forsham v. Califano*,
   587 F.2d 1128 (D.C. Cir. 1978) .......................................................................................... 7

*Freedom Watch, Inc. v. Obama*,
   807 F. Supp. 2d 28 (D.D.C. 2011) ............................................................................. 2, 4, 13

*Gates v. Schlesinger*,
   366 F. Supp. 797 (D.D.C. 1973) ................................................................................ 3, 4, 7

*Goodyear Atomic Corp. v. Miller*,
   486 U.S. 174 (1988) .......................................................................................................... 13

*Griffin v. Oceanic Contractors, Inc.*,
   458 U.S. 564 (1982) ............................................................................................................ 8

*Heartwood, Inc. v. U.S. Forest Serv.*,
   431 F. Supp. 2d 28 (D.D.C. 2006) ...................................................................................... 4

*Hodge v. Evans Fin. Corp.*,
   707 F.2d 1566 (D.C. Cir. 1983) ........................................................................................ 11

*Judicial Watch, Inc. v. Dep't of Energy*,
   412 F.3d 125 (D.C. Cir. 2005) .................................................................................................. 3

*Judicial Watch, Inc. v. Fed. Hous. Agency*,
   646 F.3d 924 (D.C. Cir. 2011) .................................................................................................. 8

*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
   583 F.3d 871 (D.C. Cir. 2009) ..................................................................................... 4, 5, 8, 10

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. 519 (2013) .................................................................................................................. 8

*Nationwide Mut. Ins. Co. v. Darden*,
   503 U.S. 318 (1992) ................................................................................................................ 11

*Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*,
   557 F. Supp. 524 (D.D.C.),
   *aff'd,* 711 F.2d 1071 (D.C. Cir. 1983) ..................................................................................... 5

*Rewolinski v. McEntee*,
   Civ. A. No. 96-2110-LFO, 1997 WL 22890 (D.D.C. Jan. 15, 1997) ...................................... 11

*Riefkin v. E.I. DuPont de Nemours & Co.*,
   290 F. 286 (D.C. Cir. 1923) .................................................................................................... 11

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) .............................................................................................................. 6, 13

*Wash. Research Project, Inc. v. Dep't of Health, Educ. & Welfare*,
   504 F.2d 238 (D.C. Cir. 1974) .................................................................................................. 7

*Wolfe v. Weinberger*,
   403 F. Supp. 238 (D.D.C. 1975) ............................................................................................ 4, 7

**STATUTES**

Federal Advisory Committee Act ("FACA"),
   5 U.S.C. app. 2 ............................................................................................................... 1, 12, 13

5 U.S.C. app. 2 § 3 ........................................................................................................................ 9

5 U.S.C. app. 2 § 10 ...................................................................................................................... 8

5 U.S.C. § 552 ............................................................................................................................... 1

28 U.S.C. § 2201 ........................................................................................................................... 2

Pandemic and All-Hazards Preparedness and Advancing Innovation Act of 2019,
Pub. L. 116-22, 133 Stat. 905 ........................................................................................ 12

**REGULATIONS**

5 C.F.R. § 531.403 ........................................................................................................ 9

**RULES**

Fed. R. Civ. P. 8 ........................................................................................................ 13

**OTHER AUTHORITIES**

Disclosure of Advisory Committee Deliberative Materials,
12 Op. O.L.C. 73 (1988) ........................................................................................ 4, 7

FACA § 10 ........................................................................................................ 1, 5

McCain Act § 1051 ........................................................................................ 10, 11, 12

## INTRODUCTION

Defendants National Security Commission on Artificial Intelligence ("AI Commission" or "Commission"), Eric Schmidt, in his official capacity as Chairman of the Commission, and Ylli Bajraktari, in his official capacity as Executive Director of the Commission (collectively, the "Commission Defendants") file this brief in further support of Defendants' Motion to Dismiss FACA Claims ("Defendants' Motion"), ECF No. 28, and in opposition to Plaintiff's Combined Opposition to Defendants' Motion and Motion for Partial Summary Judgment ("Opposition and Cross-Motion"), ECF No. 30.

The Court should dismiss Plaintiff's claims based on alleged violations of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2, and deny Plaintiff's motion for summary judgment on those claims. FACA applies only to advisory committees. The Court has already held that the AI Commission is an agency subject to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and agencies cannot be advisory committees. Moreover, even had the Court not already ruled on this issue, the Commission does not meet the definition of an advisory committee because its members are permanent, part-time federal employees. Plaintiff fails to effectively rebut either of the Commission's arguments. No law supports Plaintiff's notion of a hybrid entity subject to both FOIA and FACA. Nor does any rule of statutory construction permit FACA's § 10(b) to supersede conflicting provisions in FOIA's Exemption 5. And there is no reason to interpret the word "permanent" to mean something different than as the same term is commonly used in employment law. FACA, in short, does not impose any obligations on the Commission, and Plaintiff's claims predicated on FACA violations cannot succeed.

.

## ARGUMENT

**I.  Plaintiff has Abandoned Its Claims Brought Directly Under FACA and Any Claims Brought Under the Declaratory Judgment Act.**

Neither FACA nor the Declaratory Judgment Act, 28 U.S.C. § 2201, provides a cause of action by which a plaintiff can bring a cognizable claim.  *See Elec. Privacy Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27, 38 (D.D.C. 2019); *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 32-33 (D.D.C. 2011).  However, Plaintiff's Counts I and IV rely explicitly and exclusively on claims brought under FACA.  Compl. at 28, 31.  Likewise, Plaintiff refers to its lawsuit as "an action under," among other statutes, "the Declaratory Judgment Act." *Id.* ¶ 1.  The Commission Defendants therefore moved to dismiss the claims brought under those laws.  Defs.' Mot. at 6-7, 11-12.  In response, Plaintiff now denies that it ever "assert[ed] that it has a cause of action under either statute."  Opp. & Cross-Mot. at 24 n.2.  Given that Plaintiff has explicitly abandoned these claims, the Court should dismiss Counts I and IV as well as any claims arising under the Declaratory Judgment Act.

**II.  The Court Should Dismiss Plaintiff's Claims Under the APA.**

In Counts II, III, and V, Plaintiff asserts claims under the Administrative Procedure Act ("APA") based on alleged violations of FACA.  Compl. at 29-30, 32.  These claims fail because the APA applies to agencies, and a government entity cannot be both an agency and an advisory committee.  Moreover, the AI Commission does not fall within the statutory definition of an advisory committee because its members are permanent, part-time federal employees.  Although Plaintiff disputes both of these points, its responses are unavailing.

A.  <u>A Government Entity Cannot be Both an Agency and an Advisory Committee.</u>

Almost fifty years of unbroken precedent and basic canons of statutory construction mandate the conclusion that an agency subject to FOIA cannot be an advisory committee subject

to FACA and vice versa. *See Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 132 (D.C. Cir. 2005).[1] Plaintiff nonetheless contends that a government entity can be both an agency and an advisory committee. In support of this contention, Plaintiff argues that (1) all existing case law on this issue is wrong and (2) the obligations imposed by FOIA and FACA are consistent. These arguments lack merit because FOIA and FACA cannot be applied consistently to the same entity, which is precisely the rationale underlying courts' uniform holdings that advisory committees cannot be agencies. Moreover, basic canons of statutory construction show that FACA contemplated advisory committees being distinct entities from agencies.

> 1. *The Different Application of FOIA Exemption 5 Demonstrates that a Government Entity Cannot be Both an Agency and an Advisory Committee.*

The clearest inconsistency in deeming the same entity an advisory committee and an agency concerns the entity's obligation to disclose internal deliberative documents. As originally explained in *Gates v. Schlesinger*, 366 F. Supp. 797 (D.D.C. 1973), if an advisory committee were also an agency, then the FOIA exemption shielding intra- and inter-agency deliberations from disclosure would also apply to the committee's internal materials. *Id.* at 798-800. Because "Congress has expressly determined in the Federal Advisory Committee Act that [a]dvisory [c]ommittee reports and functions are *not* generally confidential," Congress could not have intended advisory committees also potentially to be agencies subject to FOIA. *Id.* at 799.

---

[1] Plaintiff baselessly asserts that the Commission Defendants "misleadingly quote[d]" *Department of Energy* in their Motion in support of the proposition that agency records and advisory committee materials are mutually exclusive types of documents. Opp. & Cross-Mot. at 17 (citing Defs.' Mot. at 8). To the contrary, the D.C. Circuit stated as much when it reasoned "that the records [advisory committee] employees created or obtained while on detail [to an agency] were those of the [advisory committee], not those of the [agency], and hence not 'agency records' within the meaning of FOIA." *U.S. Dep't of Energy*, 412 F.3d at 132.

Applying FOIA to advisory committees would therefore be "irreconcilable . . . with the very purpose of the Federal Advisory Committee Act." *Id.* at 800.

Although Plaintiff recounts the facts of *Gates* in some detail, it never explains why the court's analysis in that case was wrong or why the same analysis would not apply to the instant case. Opp. & Cross-Mot. at 14-15. Rather, Plaintiff contends that, between 1975 and 2019, four decisions of this Court have mindlessly parroted dicta as doctrine.[2] *Id.* at 15-16. This is not the case. The next judge in this jurisdiction to consider the relationship between FOIA and FACA also held "that an advisory committee cannot have a 'double identity' as an agency" on the basis of *Gates*'s "convincing argument to th[at] effect" and provided an additional statutory insight further supporting that holding conclusion. *Wolfe v. Weinberger*, 403 F. Supp. 238, 242 (D.D.C. 1975). The Department of Justice's Office of Legal Counsel then issued a formal opinion on the application of FOIA Exemption 5 to advisory committees, which reached the same conclusion as *Gates* because "an advisory committee is not itself an agency" and any contrary interpretation of FACA would "create an irreconcilable conflict between the two laws." Disclosure of Advisory Committee Deliberative Materials, 12 Op. O.L.C. 73, 75-76 (1988); *see also id.* at 77 ("The potential conflict is underscored by the obligation to disclose committee drafts . . . whereas exemption 5 is designed to preserve the integrity of precisely these types of 'predecisional' internal deliberations . . . ."). Even the D.C. Circuit has stated that FOIA Exemption 5 applies differently to agencies and advisory committees. *See Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 583 F.3d 871, 874 (D.C. Cir. 2009) (noting that FOIA "exempts materials

---

[2] These cases are: *Elec. Privacy Info. Ctr. v. Drone Advisory Comm.*, 369 F. Supp. 3d 27, 41 (D.D.C. 2019) (Contreras, J.); *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 33 (D.D.C. 2011) (Roberts, J.); *Heartwood, Inc. v. U.S. Forest Serv.*, 431 F. Supp. 2d 28, 36 (D.D.C. 2006) (Roberts, J.); *Wolfe v. Weinberger*, 403 F. Supp. 238, 242 (D.D.C. 1975) (Richey, J.).

4

manifesting an agency's deliberative processes, while FACA is not so limited" (internal citations omitted)).  Far from being a one-off jurisprudential mistake, *Gates* and its progeny represent several independent and well-reasoned legal analyses.

Plaintiff provides two responses to the incompatibility of FOIA and FACA, neither of which has merit.

Plaintiff initially questions whether FOIA and FACA have different scopes at all.  Opp. & Cross-Mot. at 18-19.  This questioning lacks merit because it is directly contradicted by the D.C. Circuit's statement in *Department of Commerce*, 583 F.3d at 874, that FOIA and FACA have different scopes as well as every district court decision to consider the issue.  Instead of providing any contrary legal authority, Plaintiff devotes this section of its brief primarily to claiming that the Commission Defendants' position on FACA's scope is in tension with Defendants' earlier arguments concerning the breadth of Plaintiff's FOIA request.  Opp. & Cross-Mot. at 18.  Specifically, Plaintiff asserts that there is no difference in the Commission Defendants' obligations under the statutes because Plaintiff used FACA § 10(b)'s language in its FOIA request.  *Id.*  Plaintiff's assertion is both wrong and irrelevant.  The assertion is wrong because FOIA and FACA have different scopes, so the mandatory disclosures under each will differ in type and volume, even if a FOIA request uses FACA language.[3]  Plaintiff's argument is also irrelevant, because the relevant question before the Court is whether FOIA and FACA are

---

[3] Courts have interpreted FACA to apply to only material used by the advisory committee, not all documents within the possession of the commissioners or commission staff.  *See Nat'l Anti-Hunger Coal. v. Exec. Comm. of President's Private Sector Survey on Cost Control*, 557 F. Supp. 524, 529 (D.D.C.), *aff'd,* 711 F.2d 1071 (D.C. Cir. 1983).  FOIA's initial scope is broader, although the more robust protections of FOIA Exemption 5 offset that to a degree.  *See U.S. Dep't of Commerce*, 583 F.3d at 874.

legally consistent, not whether the wording of a particular request happens to avoid a conflict in a specific case.

Plaintiff then asserts that Congress could implicitly "modify the transparency obligations of a particular federal entity through overlapping statutes," so the Court should disregard the conflicts between FOIA's and FACA's disclosure requirements. Opp. & Cross-Mot. at 19. The fact that Congress <u>could</u> modify federal entities' obligations, however, does not provide any evidence that Congress <u>did</u> modify them. Also, Plaintiff provides no justification for its assumption that the purported overlap in FOIA and FACA would favor disclosure. Congress enacted FOIA Exemption 5 because protecting agencies' internal deliberations is necessary to their proper functioning, and because requiring disclosure of internal executive branch deliberations would raise serious separation of powers issues rendering the FOIA unconstitutional. Moreover, there is no reason why FACA's goal of ensuring transparency in advisory committees would necessarily trump Exemption 5 if an entity could be both an agency and an advisory committee. Reading the statutes to be mutually exclusive is the only way to avoid a conflict between the competing provisions. Plaintiff's reading, on the other hand, violates the "cardinal principle of statutory construction," that statutes should be construed to give effect to all duly enacted language. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

2. *Additional Evidence of Legislative Intent Further Demonstrates that Agencies and Advisory Committees are Distinct Types of Government Entities.*

In addition to the irreconcilable application of Exemption 5 to agencies and advisory committees, there are four additional statutory reasons that the most natural interpretation of the FACA statute is that a government entity cannot be both an advisory committee and an agency.

6

*First*, "[i]t is significant that the Federal Advisory Committee Act contains a separate and distinct definition of an 'advisory committee', thus supporting the proposition that an advisory committee is not an 'agency'." *Gates*, 366 F. Supp. at 798-799.  In other words, by "specifically distinguish[ing] between an advisory committee and an agency in [FACA's] section defining statutory terms," Congress "ma[de] clear that an advisory committee is not an agency." Disclosure of Advisory Committee Deliberative Materials, 12 Op. O.L.C. at 80-81.

*Second*, "FACA is predicated on the assumption, emphasized several times in the statute, that advisory committees give advice and recommendations, whereas agencies are operating arms of government" and this "statutory distinction . . . signif[ies] that advisory committees are not agencies." *Id.*; *see also Gates*, 366 F. Supp. at 799 (same).  Indeed, the D.C. Circuit stated as much when it ruled that panels for reviewing grant applications were "advisory committees . . . not agencies" and therefore "not [themselves] agenc[ies] under the APA nor, consequently, subject to the structures of the FOIA."  *Wash. Research Project, Inc. v. Dep't of Health, Educ. & Welfare,* 504 F.2d 238, 246-248 (D.C. Cir. 1974); *see also Forsham v. Califano*, 587 F.2d 1128, 1135-36 (D.C. Cir. 1978) (noting that agencies, not outside advisory entities, are subject to FOIA).

*Third*, "the definition of 'advisory committee' in the Advisory Committee Act specifically excludes 'any committee which is composed wholly of fulltime officers or employees of the Federal Government,' thus providing further evidence that 'agency' and 'advisory committee' were not meant by Congress to be congruent concepts." *Wolfe*, 403 F. Supp. at 242 (quoting FACA as then-enacted).  In other words, Congress provided a carve-out from the definition of "advisory committee" that effectively prevents agencies from qualifying, signaling its intent to make them separate categories.  The Court should not thwart that intent by

judicially creating a third category of agency/advisory committee hybrids never contemplated by Congress.

*Fourth*, the Court should interpret the relevant statutes presuming that Congress did not intend serious "practical problems" with implementation. *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 538, 544-45 (2013).  As discussed at length in Defendants' Motion, complying with both FACA and FOIA would impose greater burdens on a government entity than is contemplated by either statute alone as well as wasting government resources on complying with redundant requirements.  Defs.' Mot. at 8-9.  For example, such an entity would have to both make its materials available to the public on a continuing basis and produce specific records in response to specific requests.  *Compare* 5 U.S.C. app. 2 § 10(b) *with Judicial Watch, Inc. v. Fed. Hous. Agency*, 646 F.3d 924, 926 (D.C. Cir. 2011).  Such an interpretation "would produce an absurd and unjust result which Congress could not have intended."  *Clinton v. City of New York*, 524 U.S. 417, 429 (1998) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 574 (1982)).  When it enacted the FACA and FOIA statutes, Congress balanced government transparency against government efficiency and efficacy.  There is no reason to believe that Congress intended to impose both FOIA's and FACA's transparency obligations on hypothetical agency/advisory committee hybrids, particularly given that those obligations are in tension with each other.  *See U.S. Department of Commerce*, 583 F.3d at 874 ("The scope of FOIA's document disclosure requirements is in a number of respects narrower than FACA's analogous requirements.").  This impractical reading should therefore be rejected.

    B. <u>The AI Commission Does Not Meet the Statutory Definition of an Advisory Committee Because Its Members are Permanent, Part-Time Employees.</u>

The John S. McCain National Defense Authorization Act for Fiscal Year 2019 ("McCain Act"), which established the AI Commission, made the AI Commission members permanent,

part-time federal employees. Defs.' Mot. § III.B.2.a. As such, the Commission falls outside FACA's definition of an advisory committee. *See* 5 U.S.C. app. 2 § 3(2)(C)(i). Plaintiff attempts to rebut this proposition by asserting that (1) the Commission members cannot be permanent employees, (2) the Commission members are not part-time employees, and (3) the lack of an explicit statutory carve-out from FACA should be interpreted to mean that Congress intended the Commission to be covered by FACA. Opp. & Cross-Mot. at 10-14. Not only are these arguments barred by judicial estoppel as inconsistent with Plaintiff's earlier position that the Commission is an agency, *see* Defs.' Mot. § III.B.2.b; § II.A, *infra*, but they also fail on their merits.

1. *The AI Commission Members are Permanent Employees of a Temporary Organization.*

Civil service regulations provide that a permanent employee can work for a temporary organization, so long as the "appointment [to the organization] is not designated as temporary by law and does not have a definite time limitation of one year or less." 5 C.F.R. § 531.403. Plaintiff asserts that the Court should not interpret FACA's terms consistent with this regulatory definition and that the members of the AI Commission would not be permanent employees even under this definition. Neither argument is availing.

The Court should interpret the phrase "permanent . . . officers or employees" in FACA consistently with the civil service regulation defining "permanent [employment] position[s]." Plaintiff argues that the Court should disregard this regulation because the defined term is not precisely the same as the statutory term and because the regulation is contained in a subpart of

9

the civil service regulations specifically concerning pay-grades.[4]  Opp. & Cross.-Mot. at 11.  Plaintiff fails to identify a statutory or regulatory definition for "permanent employee," instead asking the Court to assume the term's ordinary meaning.  *See id.*

Initially, absent contrary indications of legislative intent, courts should interpret undefined statutory terms to make them consistent with relevant federal regulations.  *See Fed. Deposit Ins. Corp. v. Phila. Gear Corp.*, 476 U.S. 426, 431-32 (1986) (considering regulatory definition when determining legislative intent of ambiguous statutory term).  The ordinary understanding of a "permanent employee" is a person filling a permanent employment position.  A membership on the AI Commission is a permanent position for purposes of the federal civil service regulations implementing Title 5 of the U.S. Code, and the Court should interpret the FACA statute accordingly.[5]  *Cf. Assoc. of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 904-05 (D.C. Cir. 1993) ("The district court, finding no definition of officer or employee of the federal government in FACA itself, quite reasonably turned to Title 5 of the U.S. Code to find a definition.").

---

[4]  There is some irony to Plaintiff's position, given that Plaintiff's entire argument concerning the applicability of FOIA to the AI Commission was that two non-identical statutory terms in disparate statutes— "established in the executive branch" in the McCain Act and "establishment in the executive branch" in the FOIA statute—should be read to be synonymous.  *See* Pl.'s Opp. to Defs.' Partial Motion to Dismiss, ECF No. 24, at 1, 13.

[5]  In a single sentence, Plaintiff disputes that the definition of "permanent position" in the civil service regulations would cover membership on the AI Commission because that definition excludes "an employee whose appointment is . . . designated as temporary by law."  Opp. & Cross-Mot. at 12.  However, Plaintiff does not provide any support for this exclusion applying to the Commission members.  The McCain Act does not designate their employment as temporary.  *See generally* McCain Act § 1051.  Thus, Plaintiff simply begs the question by assuming that a position with a temporary organization is not a permanent position and then relying on that assumption to claim to have proved it.

Even if the Court gives no weight to the regulatory definition of "permanent position," the accepted meaning of "permanent employee" also supports the conclusion that the AI Commission members are permanent employees. "Where Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992) (alteration in original omitted) (quoting *Comm. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989)). Under the common law, a permanent employee is one who is guaranteed a position with an employer so long as the employee's work is satisfactory and the employer continues to engage in work that requires the employee's job functions. *See Hodge v. Evans Fin. Corp.*, 707 F.2d 1566, 1668 (D.C. Cir. 1983); *see also Riefkin v. E.I. DuPont de Nemours & Co.*, 290 F. 286, 289 (D.C. Cir. 1923); *Rewolinski v. McEntee*, Civ. A. No. 96-2110-LFO, 1997 WL 22890, *2 (D.D.C. Jan. 15, 1997). Here, the members of the Commission are permanent employees because they are guaranteed employment "for the life of the Commission," *i.e.*, until the Commission is no longer engaged in work that requires the members' services. McCain Act § 1051(a)(6). Thus, Plaintiff's appeal to the ordinary meaning of "permanent employee" is also unavailing.

  2. *The Members of the AI Commission are Part-Time Federal Employees.*

Plaintiff contends that the members of the AI Commission do not qualify as part-time employees, arguing that they are instead intermittent employees. Opp. & Cross-Mot. at 12. The only support Plaintiff proffers on this point is the assertion that Defendants conceded this issue in their Answer. *Id.* (citing Complaint ¶ 43 and Answer ¶¶ 40-43). Plaintiff's argument fails, however, because Defendants did not admit that Commission members are intermittent employees. Plaintiff alleged that "the members of the AI Commission are employed on an

11

'intermittent' basis in 'excepted service' positions." Compl. ¶ 43. This allegation is a bare legal conclusion concerning the effect of Congress making Commission members "employees." *See* McCain Act § 1051(a)(7). As such, Defendants answered the allegation by stating that it (and the allegations in two other paragraphs) are legal characterizations of the McCain Act "to which no response is required." Answer ¶¶ 40-43. If this statement were not clear enough, Defendants explicitly stated elsewhere in the Answer that "[a]ny allegation not expressly admitted is hereby denied." *Id.* at 13. Because Defendants did not concede that the members of the Commission are intermittent employees—the sole basis for Plaintiff's argument that they are not part-time employees—Plaintiff's argument fails.

### C. The Absence of a Specific Exemption from FACA in the McCain Act Does Not Mean Congress Intended the AI Commission to be an Advisory Committee.

As its final argument for the AI Commission being an advisory committee, Plaintiff argues that the Court should read Congressional intent into the absence of specific statutory language in the McCain Act exempting the Commission from FACA. Opp. & Cross-Mot. at 13-14. This argument is also unsuccessful. Whether the Commission is an advisory committee is a matter of statutory interpretation based on the language of the McCain Act and FACA. Although the presence of an explicit exemption would obviously be dispositive, no canon of statutory construction provides that the Court should assign weight to its absence.

Plaintiff makes much of Congress not adding such an exemption when it amended the McCain Act to extend the life of the Commission, which occurred after this case was pending. *Id.* at 13-14. However, it is at least as telling that Congress also did not explicitly make the Commission an advisory committee, as it has done in the organic statutes of other entities. *See, e.g.*, Pandemic and All-Hazards Preparedness and Advancing Innovation Act of 2019, Pub. L. 116-22, § 505, 133 Stat. 905, 952 ("The Federal Advisory Committee Act (5 U.S.C. App.) shall

apply to the activities and duties of the Advisory Council."). Moreover, there was no need to include a FACA exemption at that time because (a) the Court had already ruled the Commission was an agency based on Congress establishing the Commission in the executive branch, (b) Congress is presumed to know how the courts have interpreted extant law, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988), and (c) the extant law holds that a government entity cannot be both an agency and an advisory committee, *see Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 33 (D.D.C. 2011). Thus, there was no need for Congress to add language exempting the Commission from FACA. Plaintiff's reliance on the language Congress did not enact falls short in light of the statutory language Congress actually enacted.

### III.     The Court Should Dismiss Any Claims Plaintiff Purports to Bring Under the Mandamus Act.

Even if Plaintiff had adequately pleaded a Mandamus Act claim,[6] it would not be entitled to relief on that claim. As set forth in Defendants' Motion, Plaintiff cannot show either that the Commission Defendants have violated "a clear duty to act" or that Plaintiff has "a clear and indisputable right to relief," either of which alone would warrant dismissal. *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see* Defs.' Mot. § III.B.2. However, Plaintiff's arguments in its Opposition and Cross-Motion have created an additional problem with any

---

[6] The parties dispute whether the Complaint's single reference to the Mandamus Act as a cause of action is sufficient to meet the pleading standards of Federal Rule of Civil Procedure 8(a). Defs.' Mot. at 11-12; Opp. & Cross-Mot. at 23. Although Plaintiff asserts that lone mention was sufficient to provide Defendants fair notice that Plaintiff intended a Mandamus Act claim, Opp. & Cross-Mot. at 23, this assertion is in tension with Plaintiff's claim that Defendants should have known that Plaintiff did not intend to bring a claim under the Declaratory Judgment Act, *id.* at 24 n.2. The only mention of either statute as a cause of action (rather than as a remedy) is Plaintiff's characterization of its lawsuit as "an action under . . . the Mandamus and Venue Act of 1962 . . . and the Declaratory Judgment Act." Compl. ¶ 1. Given the equal treatment of the statutes, it is difficult to see how Plaintiff can claim that it pleaded a claim under one but not the other. Regardless, the Complaint speaks for itself on this point.

Mandamus Act claims—the lack of an adequate alternate remedy. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d at 189.

The AI Commission has no clear duty to comply with FACA because the Commission is not an advisory committee. Plaintiff disputes this conclusion, relying exclusively on its earlier arguments on this issue in the portion of Plaintiff's brief devoted to its APA claims. *See* Opp. & Cross-Mot. at 24. That analysis fails for the reasons already discussed in the context of Plaintiff's APA claims. *See* §§ II.A, II.B, *supra* (explaining that the AI Commission is not an advisory agency because (a) as an agency, the Commission cannot be an advisory committee and (b) the Commission members are permanent, part-time employees).

Plaintiff lacks a clear and indisputable right to relief because Plaintiff is judicially estopped from arguing that the Commission is an advisory committee because that position is inconsistent with the Commission being an agency subject to FOIA. Plaintiff implicitly concedes that judicial estoppel would apply if its positions were inconsistent but protests that judicial estoppel should not apply because an entity can be simultaneously an agency and an advisory committee. *See* Opp. & Cross-Mot. at 24. Plaintiff again relies exclusively on its arguments to that effect in the context of its APA claims. *Id.* However, Plaintiff's arguments fail for the reasons discussed in the APA context. *See* § II.A, *supra.* Thus, judicial estoppel precludes Plaintiff from having a clear right to relief, as required by the Mandamus Act.

Finally, Plaintiff has painted itself into a corner with regard to the availability of an adequate remedy. If Plaintiff can state an APA claim—as Plaintiff contends it can—then any Mandamus Act claim would fail because the APA would provide an alternate avenue for relief. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d at 189. On the other hand, Plaintiff has defended its Mandamus Act claims exclusively by relying on the arguments it raised in support of its APA

claims. *See* Opp. & Cross-Mot. at 24. If those arguments fail under APA review, then they also fail to meet the Mandamus Act's heightened burden. In that scenario, Plaintiff would have no other available remedy, but it would not have established either a clear duty to act or a clear right to relief. So, either way, Plaintiff's success will depend solely on its APA claims. Because Plaintiff's APA claim fails, all the FACA-based counts of the complaint should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims against the Commission Defendants alleging FACA violations and deny Plaintiff's cross-motion for summary judgment.

Dated: February 28, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ *Gary D. Feldon*
GARY D. FELDON
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
*Via Special Delivery*: 1100 L St. NW, Room 11104
Washington, DC 20005
*Via Mail*: P.O. Box 883, Washington, DC 20044
Tel: (202) 514-4686
Fax: (202) 616-8460
E-mail: gary.d.feldon@usdoj.gov

*Attorneys for Defendants*